### ANDREW J. CLARK *vs.* ROSCOE W. BAKER.

#### JUNE 22, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)   Taxation.   Redemption.   Sale.   Time.*

The tax sale which is the starting point from which time is figured on the owner's right of redemption, is the auction sale and not the transaction completed by delivery of the deed.

*(2)   Taxation.   Sales.   Deeds.*

One of the necessary acts in order to give a tax collector authority to convey the estate is the collection of the sale price from the purchaser; that is either the amount must have come into the actual possession of the town's legal agent or he must be chargeable therefor.

*(3)   Taxation.   Sales.   Return of Collector.*

While the return of a tax collector in a sale of real estate under G. L. cap. 62, § 16, need not state every detail of his doings he must prove in some way that he has done every act required of him by statute necessary to give authority to convey the estate.

*(4)   Taxation.   Deeds.   Time.*

While G. L. 1923, cap. 62, § 16 would seem to contemplate a complete transaction in ten days including the giving of a deed, the point concerning the giving of the deed is not decided.

*(5)   Taxation.   Sale.   Payment.   Return.*

Under the statute governing tax sales the payment of the purchase money must be made before the return of the collector of his proceedings prescribed to be made by him within ten days after the sale, by G. L. 1923, cap. 62, § 16.

*(6)   Taxation.   Sales.   Sale on Credit.*

The act of a tax collector in waiting for one year after a tax sale before collecting the purchase money and giving a deed is a violation of the statute by making the sale upon credit.

Trespass and Ejectment. Heard on exceptions of defendant and sustained.

| | |
|---|---|
| Andrew J. Clark<br>*vs.*<br>Roscoe W. Baker. | Ex. &c. No. 6061. |
| Same<br>*vs.*<br>Same. | Ex. &c. No. 6062. |
| Same<br>*vs.*<br>Same. | Ex. &c. No. 6063. |
| Same<br>*vs.*<br>Same. | Ex. &c. No. 6064. |
| Same<br>*vs.*<br>Same. | Ex. &c. No. 6065. |
| Same<br>*vs.*<br>Same. | Ex. &c. No. 6066. |
| Same<br>*vs.*<br>Same. | Ex. &c. No. 6067. |

Barrows, J. The above seven cases involve the same question and will be treated as a single case.

The action is trespass and ejectment. Plaintiff's title rests upon an alleged tax sale. At the conclusion of the evidence in the Superior Court a verdict was directed for plaintiff. Defendant is here on exceptions thereto and further on exception to the action of the trial court in refusing to direct a verdict for defendant.

A tax sale of seven lots was advertised and no claim is made of irregularity in proceedings prior to the auction sale. The tax levied was due to the town of North Smithfield for the year 1921. The tax collector held a. public auction, pursuant to his notices, on January 23, 1923, and the auctioneer knocked down each lot to one Christopher Aspel. On the same day the tax collector made a sworn return pursuant to General Laws, 1923, Chap. 62, § 16. That section, so far as is material, is as follows: ". . . the collector, in all cases of sales of real estate, shall make a return of all his proceedings under oath into the town clerk's office, within ten days after the sale; which return shall be evidence of the facts therein stated." The material parts of the return so made are as follows: "Slatersville, R. I., January 23, 1923. To Whom It May Concern: The following parcels of real estate were this day sold at public auction for the taxes of the year 1921: (here follow the various parcels of land, the names of the parties to whom they are taxed and the amount of tax) "Sold to Christopher Aspel of Union Village, in North Smithfield."

The tax collector did not ask for, have tendered or receive any money or evidence of indebtedness from Aspel nor did he offer him any deed or fix any time for delivery of deed. Nothing further was done by anyone connected with the transaction or by the owner whose land was taxed until February 21, 1924. Then seven different checks, no one of which is for the exact amount of any of Aspel's bids, were made out to Aspel by plaintiff Clark and indorsed by Aspel to the tax collector. They are for varying amounts, each of them in excess of the specific tax which it was evidently intended to pay but nothing in the record indicates how the amounts were arrived at. One may surmise that they include interest on the bids from the day of the auction to the time of payment, or a proportionate share of the expenses of sale or both. On February 29, 1924, the tax collector executed a deed for each parcel to Aspel and Aspel executed on the same day a deed of each parcel to plaintiff Clark. Under the latter deeds plaintiff makes title in this case.

Aspel testified that he never actually paid anything for the land. He says: "I wasn't very much interested in it at all anyhow." "I wasn't to keep it. I didn't buy it to keep it because I knew I couldn't get 110 acres of land for $60 in North Smithfield. I wasn't going to get fooled on it. The other fellow got fooled. I wasn't going to."

Plaintiff admits that the tax collector had no authority to sell on credit and claims the facts do not warrant the view that this was a credit sale; he urges that Aspel as the highest and accepted bidder at the auction became legally liable for his bid and that the delay of the tax collector in demanding the amount of the bid could not affect the validity of the sale or deed given by the tax collector to Aspel more than thirteen months after the sale. Plaintiff contends that the deed recites a sale and by Section 17 of Chapter 62, the recitals are evidence of the facts stated and show in connection with the transfer from Aspel to plaintiff that the legal title was in plaintiff and that he is entitled to hold the verdict directed in his favor.

Defendant urges that the tax deed conveys no title because it was not given within ten days of the auction sale; that a delay of thirteen months rendered redemption by the owner impossible and that therefore the deed was void even though there is no evidence of any attempt to redeem by the owner.

Our statute, unlike that of some states where redemption is through the tax collector, provides for redemption within one year by the owner from the purchaser at a tax sale. Chapter 62 refers to the sale which is the starting point from which time is figured on the owner's right to redeem in Sections 13, 14, 15, 16, 17, 18, 22, 23, 24 and 25. Examination of these sections leaves no doubt that the sale referred to is the auction sale and not the transaction completed by delivery of the deed. Section 16, quoted above, has been construed by this court in *Thurston* v. *Miller*, 10 R. I. 358. In that case the court held that every detail of the tax collector's doings need not be stated in the return of the

collector but that it was sufficient if the collector could prove in some way that he had done every act required of him by statute necessary to give authority to convey the estate. One of the necessary acts in order to give the collector this authority must be the collection of the sale price. By collection we mean that either the amount must have come into the actual possession of the town's legal agent or he must be chargeable therefor. The town may not be held to have collected the tax when it has only a chose in action against the person to whom the land was sold. The return does not say that the tax collector has received the amount bid, nor is there any evidence that he as tax collector had become liable therefor to the town. There is much in Section 16 to lead one to believe that the statute contemplated a completed transaction in ten days including the giving of a deed. The return required is of "all" of the tax collector's proceedings and *Thurston* v. *Miller, supra,* where the deed was actually passed before the return, at page 363, uses this significant language: "The deed may be made at any time after the sale and before the time limited for the collector's return." We can not subscribe to plaintiff's view that the context from which the above quotation is taken shows that the important words are "at any time after the sale," and that the later words do not limit the time but merely make clear that the deed may even be passed before the return is made. Such seems to be a forced construction of the language. The collection of the price bid and the giving of the deed are certainly vital parts of the tax collector's proceedings but the present case does not call for a decision concerning the giving of a deed within ten days.

Whether or not the deed must be executed and delivered within ten days from the time of sale, the statute fairly construed calls for the payment of the purchase money before the return is made. In the case at bar the return that a sale was made for a certain price to a certain person was true in one sense, namely, that the property had been knocked down to that person as highest bidder. The

recitals of the return simply meant that a contract to sell had been made. Was this contract of sale such a completion of the tax sale as the statute contemplates shall be made by a tax collector under Chapter 62? We do not think it was. The sale was clearly one on credit extended to Aspel for thirteen months. "Credit is a term attaching to the creditor." *North Carolina R. R.* v. *Comm.,* 91 N. C. 454. Credit in a generic sense means the capacity of being trusted. *Equitable Trust Co.* v. *Keene,* 183 N. Y. Supp. 699. As ordinarily used in trade and business it is the right of one person to demand and recover from another a sum of money. 15 C.J. 1348. Indebtedness is an essential element. *Nat. Union Bank* v. *Brainerd,* 65 Vt. 291, at 298; 15 C. J. 1349. Credit is confidence or trust reposed in one's ability to pay what he may promise. *People* v. *Wasservogle,* 77 Cal. 173. The test of whether a sale is on credit is not, as urged by plaintiff, the buyer's willingness to pay when called upon nor do we agree that a sale is not on credit unless a stipulation has been made that time be given for payment as held in *Anderson* v. *Rider,* 46 Cal. 134; *Maina* v. *Elliott,* 51 Cal. 8. The true test seems to us to be whether the seller intentionally gives the buyer time within which to pay the debt. If time be so given by the seller and accepted by the buyer it is none the less credit because the buyer states that he would have been willing to pay the debt at any time if he had been asked to do so. All the evidence in this case shows that more than one year from the time of sale was purposely permitted to pass before the collector intended to demand the price or to give a deed and that defendant never expected at or about the time of the sale to pay the amount of the bid and get his deed. The various sections of Chapter 62 to which reference has been made above indicate that the owner may redeem not from one who has *agreed* to pay but from one who has *paid* what he bid. Section 18 refers to "repaying" the amount "paid" by the purchaser. Both words indicate that the purchaser is not only one who has bid in the property but one who has parted

with something more than a promise to pay. The purchaser is to be repaid "twenty per cent in addition." On what is the twenty per cent to be based? It ought to be upon some definite figure which the purchaser has paid or the town received. The words "in addition" mean addition to money paid. They become meaningless if the purchaser is to be given credit during the whole year allowed the owner for redemption.

However convenient or however prevalent the practice may be for the tax collector to wait for one year after the sale before collecting the purchase money and giving a deed, the practice seems to us a violation of the statute by making the sale upon credit. The law was not intended to allow a bidder to receive as redemption money twenty per cent on a sum which he never paid out. Neither does it contemplate the owner having to get together the tax collector and purchaser in order to pay the necessary money to redeem his property. The one and only man with whom the owner is required to deal if he seeks to redeem after a tax sale is the purchaser who has actually paid what he bid, and the amount to be paid by the owner is to be found in the return of the tax collector. The exceptions of the defendant to the action of the trial court in directing a verdict for plaintiff are sustained; and, in view of our interpretation of Chapter 62, a verdict should have been directed for the defendant.

Opportunity will be given the plaintiff to appear on Monday, July 6, 1925, at 9 o'clock, a. m., Eastern Standard time, and show cause why an order should not be made remitting the cases to the Superior Court with direction to enter judgment for the defendant.

*Walling & Walling*, for plaintiff.
*Raphael L. Daignault*, for defendant.