(No. 6469.  November 26, 1937.)

KATHLEEN W. KIVETT, Appellant, v. OWYHEE COUNTY and JOHN T. SHEA AND MYRTLE H. SHEA, Husband and Wife, Respondents.

[74 Pac. (2d) 87.]

W. H. Langroise and W. E. Sullivan, for Appellant.

Maxey, Smith and Ewing and Milo C. Axelsen, for Respondents.

MORGAN, C. J.—January 5, 1931, and during a long time prior thereto, appellant was, and had been, owner of a tract of land in Owyhee county, referred to in the record as the Jump Creek Ranch, and she has never transferred or conveyed it. Taxes were levied and assessed against the land for 1927, which were not paid and, January 5, 1931, a deed was executed by the tax collector purporting to convey it to Owyhee county for nonpayment thereof. January 4, 1932, another deed was executed by the tax collector purporting to convey the same land to the county for nonpayment of the 1927 taxes. March 26, 1932, pursuant to a resolution by its board of county commissioners, the county offered the land for sale at public auction. W. A. Lewis was clerk of the board of county commissioners and conducted the sale, and the land in question was sold to Myrtle H. Shea, who is the wife of John T. Shea, and who acted, in making the bid, on behalf of her husband and herself, for $1660, which was the amount of the accumulated taxes, penalties and interest. Thereafter the board of county commissioners entered into a contract with John T. Shea to sell the land to him for $1660, payable in instalments.

This action was commenced to vacate and set aside the proceedings intended to divest appellant of title to the land, and to establish her right to redeem it by paying the taxes, penalties and interest due and owing thereon; also for an accounting from respondents, John T. Shea and Myrtle H. Shea, for rents and profits arising from the use and occupancy thereof. Trial resulted in a decree to the effect that appel-

lant was not entitled to relief; that respondents were entitled to the land, and judgment for their costs. The case is here on appeal from the decree and judgment.

Appellant attacks the conveyance by the tax collector to the county on the ground that proof of notice it would be made is insufficient to conform to the requirements of I. C. A., sections 61–1026, 61–1027 and 61–1028. The affidavit which constitutes proof of the giving of such notice refers, not only to the property involved in this action, but to all property to be deeded to the county because of delinquent taxes for 1927. It contains this paragraph:

"That said Tax Collector has fully complied with all of the provisions of the said revenue laws by serving, or causing to be served, at least three months and not more than five months before the expiration of the time of redemption herein stated, notice of her intention to issue to the said County of Owyhee, in each of said respective cases of delinquency, a Tax Deed conveying to the said County absolute title to each of the pieces, parcels and lots in the attached notice described; that each of the individual notices in this paragraph referred to was a specific and separate notice covering each of the said delinquent entries respectively and was served in the following manner; said notice was served personally on the person or persons in actual possession or occupancy of the land and was also served upon the person in whose name the land stood on the records of the recorder's office of Owyhee County, if upon diligent inquiry he could be found within the State of Idaho; similar notice was given by registered mail to all mortgagees and holders of recorded liens against such lands in all cases where such lien holder had previously filed in the office of said Tax Collector written request for such notice; that if no person were in actual possession or occupancy of the lands of the entry and the person in whose name the lands stood could not, upon diligent inquiry, be found within the State of Idaho, the Tax Collector posted a true copy of said notice in a conspicuous place in a substantial manner upon said land, and mailed a copy of said notice, in the manner required by law, to the person in whose name the said land or lot stood on the records of the recorder's office of said Owyhee County; that said notice in this paragraph referred to set out, as to

the particular land and lot, in such notice included, all of the particulars set out in the attached published notice, and also the total amount of tax, interest and penalty necessary to be paid for the redemption of the property in the particular notice described.''

The purpose of the statute in requiring proof of notice that property will be deeded to the county for delinquent taxes is that a record be made of the giving of notice as by law required. The contents of the affidavit is sufficient for that purpose, particularly in view of the fact that the evidence at the trial discloses appellant resided without the state and had notice, by registered mail, as by law required. The record justifies the finding that the deed issued by the tax collector conveyed title to the property to the county.

Appellant further contends the sale to Myrtle H. Shea and the agreement by the county commissioners to convey the land to John T. Shea were and are in violation of the statute providing for sale of county property and are void.

We believe a decision of this contention will dispose of the case.

The facts are established in part by stipulation and in part by oral and documentary evidence. The stipulation shows the sale was held after notice given, wherein was recited that the property was to be sold pursuant to an order made by the board of county commissioners, to the highest bidder, for cash, and in which notice the land in controversy was described. The notice also contained the following:

''NOTICE IS HEREBY GIVEN, that under and by virtue of the above order of the Board of County Commissioners of Owyhee County, Idaho, I will, on the 26th day of March, 1932, at ten o'clock A. M. of that day, in front of the County Court House door, in the town of Silver City, Owyhee County, Idaho, in obedience to said order, sell to the highest bidder for cash, lawful money of the United States of America, the above described property, and that said sale shall be continued from day to day until all of said property has been disposed of.

''Dated February 16, 1932.

''W. A. LEWIS, Clerk of Board
of County Commissioners.''

R. N. Stanfield and R. C. Taylor were present at the sale. They were agents of appellant, authorized by her to bid for the land and to do everything necessary to preserve and protect her interests.

In the stipulation it is further recited:

"That at said sale said W. A. Lewis announced that this land owned by plaintiff would be offered for sale for cash; that said defendant Myrtle H. Shea bid the sum of $1660.00 cash for said land, and thereupon said land was declared sold to defendant Myrtle H. Shea for the sum of $1660.00 cash; that said defendant Myrtle H. Shea did not at that time, nor within a reasonable time thereafter, nor at any time thereafter, pay the purchase price of said land to Owyhee County; that no deed to said land was ever issued to defendant Myrtle H. Shea by Owyhee County; . . . . "

The stipulation further shows that the board of county commissioners, April 11, 1932, received the report by its clerk of the sale and entered an order wherein it was recited:

"Whereas, the Board being fully advised in the matter, it is ordered that said sale be, and the same is, hereby approved, and that this Board execute deeds covering the land so sold, as follows:

| Purchaser | Description | Amount |
|---|---|---|
| John T. Shea | (land herein involved described) | $1660.00" |

May 4, 1932, the board of county commissioners and John T. Shea entered into a written contract, wherein he was referred to as vendee, in which it was recited that, January 4, 1932, the county took tax deed to the land involved herein and thereafter advertised it to be sold March 26, 1932, and on that date offered it for sale at public auction, and said vendee made the best and highest bid therefor and the property was ordered sold to him for $1660. It was further recited in the contract as follows:

"NOW THEREFORE, It is mutually agreed between the parties hereto that the purchase price of said property shall be one thousand six hundred and sixty dollars ($1660), paid as follows, to-wit: 20 per cent of the entire purchase price shall be paid upon the execution of this Agreement in the

sum of three hundred thirty-two dollars ($332); that the remainder shall be paid in five installments, payable on the 15th. day of April of each year, as follows, to-wit:

| Date Due. | Payment Due. | Interest Due. | Total Due. |
|---|---|---|---|
| April 15, 1933, | $265.60 | $15.90 | $281.50 |
| April 15, 1934, | 265.60 | 31.80 | 297.40 |
| April 15, 1935, | 265.60 | 47.70 | 313.30 |
| April 15, 1936, | 265.60 | 63.60 | 329.20 |
| April 15, 1937, | 265.60 | 79.50 | 345.10'' |

It is further recited in the stipulation:

"That the Board of County Commissioners of defendant Owyhee County did not fix a minimum price for said land, as required by Sec. 30–713 I. C. A.; that no order of the Board of County Commissioners of defendant Owyhee County fixing said minimum price was ever entered in the minutes of the proceedings of said Board of County Commissioners of Owyhee County, as required by Sec. 30–713 I. C. A.; that the proceedings of said Board of County Commissioners of Owyhee County, if any, fixing a minimum price for said land were never published in a newspaper in said Owyhee County, nor in any other newspaper, at least thirty days prior to said purported agreement of sale of said land to defendant John T. Shea, as required by Sec. 30–713 I. C. A.''

Although the sale was advertised to be for cash, the record shows, conclusively, that the understanding and agreement of Mrs. Shea, who bid $1660 for the land, and of Mr. Lewis, who was making the sale, was that her bid was for a purchase on terms of credit. Mr. Lewis, called as a witness on behalf of respondents, testified: "I solicited Mrs. Shea a week or two before that sale to submit a bid to the county." He further testified:

"Q. When you called, or put this property up for sale, you called for cash bids, didn't you?

"A. Well, as I recall now, that that is the way that the notice of sale read, was for cash. . . . .

"Q. Did you not first read your notice, saying for cash, lawful money of the United States?

"A. Yes, I always made the practice of reading the notice and—

"Q. Then you offered it for bids?

"A. Yes.

"Q. And Mrs. Shea, or Myrtle H. Shea, bid $1650?

"A. I believe that was the amount.

"Q. Or she would pay $300 and the balance over three years?

"A. I know those were her plans because I solicited her to buy it and had talked it over with her. . . . .

"Q. At the time it was sold to Mrs. Shea you knew it was not for cash?

"A. I did, absolutely.

"Q. Did you know what the terms were to be?

"A. I knew the terms would be according to that statute which provides for the sale of land on instalment plans.

"Q. Had you had any instructions from the county commissioners to make a sale for anything other than cash—by the commissioners?

"A. We had made sales for cash.

"Q. Had you had such instructions?

"A. Certainly not. . . . .

"Q. On what terms was she to put in a bid?

"A. On the terms of the statute which provides for instalment payments."

The record shows, conclusively, that the understanding and agreement between the officer who conducted the sale and the bidder, that her bid was on terms of credit, and not for cash, was not known to appellant or her agents. There was conflict in the evidence as to what was said between the clerk, who conducted the sale, and the agents of appellant as to the terms of sale. The agents testified the clerk told them the sale was for cash, and cash only. The clerk denied having made that statement. The fact is undisputed, however, that the notice called for a cash sale; that the clerk announced before the sale started it was to be for cash, and the testimony of appellant's agents shows they understood it was to be for cash and nothing appears in the record to the contrary. Undisputed testimony by and on behalf of appellant further shows that, while she had $1,000 in cash, only, in the hands of her agents with which to make the purchase, she was will-

ing to pay at least $5,000 for the property if permitted to buy and pay for it in instalments, as provided by statute.

I. C. A., sec. 30–708, provides:

"for sale at public auction at the courthouse door, after thirty days' previous notice given by publication in a newspaper of the county any property, real or personal, belonging to the county, not necessary for its use, and such sale of real property may be made by the board of county commissioners, either for cash or upon such terms as the board of county commissioners may determine, and the same must be sold to the highest bidder. . . . . If such property is sold on terms the board of county commissioners may contract for the sale of the same for a period of years not exceeding five years, with an annual rate of interest on all deferred payments not to exceed six per cent per annum. . . . . "

Section 30–712 invests the board of county commissioners with power to sell property, acquired for delinquent taxes, which has been offered for sale pursuant to section 30–708 and not sold. It is therein provided that such property may be sold without further notice at public or private sale, upon the same terms and conditions and with like effect as sales made pursuant to the provisions of sec. 30–708.

Section 30–713 is as follows:

"Before selling any such property the board shall fix a minimum price on each piece of property to be listed for sale and make an order accordingly in the minutes of the proceedings of the board, and at least thirty days shall have elapsed after the proceedings of the board have been published before any such property shall be sold. Any person interested may appear within said thirty-day period and file a protest with the clerk of such board, which protest shall set forth the property described in the proceedings which he believes is worth more than the minimum price fixed in such order. If any such protest is filed the board shall, before selling any such property described in such protest, give such person a hearing at a time and place to be fixed by the board and after reasonable notice to be fixed by the board has been given to the person filing such protest. At such hearing the board shall determine from the evidence produced at

the hearing if the property described in the protest is worth more than the minimum fixed in the order and may raise such minimum amount in such an amount as the board may determine. But no sale shall be made for less than ninety per cent of the minimum price fixed.''

It clearly appears the sale to John T. Shea was not made on authority of section 30–712 because, as shown by the stipulation, section 30–713 was not conformed to. The remaining question is: Was the sale made to Myrtle H. Shea, on a bid to purchase the property on the instalment plan, after advertisement that it was to be sold for cash, valid? In answering this question it may be well to have in mind that this was not a tax sale, and that the authorities to the effect that a delinquent taxpayer cannot become the purchaser of his property at a tax sale thereof does not apply. This was a sale, provided for by sec. 30–708, of property belonging to the county, not necessary for its use. However, what has been said in some of the tax sale cases may throw light on the question before us.

The clerk had no authority from the board of county commissioners to sell the land on credit. Furthermore, had such authority been given, fairness and common honesty demand that the sale have been so advertised, and that all who desired to bid be invited to do so on equal terms. This is necessary, not only for the protection of bidders, but in the interest of the public and to the end that the highest possible price be received for the property.

The Supreme Judicial Court of Maine, in *Cushing v. Longfellow*, 26 Me. 306, 309, decided in 1846, said:

''It appears that in making the sale he stipulated to give to the purchaser a credit of something like two, four and six months, for the purchase money. This he was not authorized by law to do. He should have sold for cash down. Public agents, authorized to make sales, in the absence of any express authority to the contrary, can do no otherwise. Those who deal with them are bound to take notice, that such is the case, and become privy to the erroneous proceeding.'' (*Semmes v. Fuller*, 263 Mich. 214, 248 N. W. 599; *Taylor v. Auditor*

*General*, 275 Mich. 47, 265 N. W. 772; *Clark v. Baker*, 47 R. I. 1, 129 Atl. 609.)

The sale under consideration was at auction and the law regulating and controlling auctions applies to it. The text in 6 C. J. 827, 828, sections 19 and 20, is as follows:

(19) "Printed conditions under which a sale proceeds are binding on both buyer and seller, and cannot be varied, although they may be explained by verbal statements of the auctioneer made at the time of the sale. Thus an auctioneer may, at the time of the sale, explain the meaning of advertisements published before the sale.

(20) "The conditions of a public sale, announced by the auctioneer at the time and place of the sale, are binding upon a purchaser, whether he knew them or not. So also, where it is the custom to post up the conditions in the auctioneer's room, and the auctioneer announces that the conditions are as usual, a purchaser is bound by the conditions, whether he sees them or not."

In *Taylor v. Auditor General*, above cited, it is said:

"Whether from good or bad motives, a sale on understanding for credit amounts to collusion between the treasurer and prospective purchaser to violate the law. It opens the door to unlawful preference of purchasers, to virtual fraud upon landowners and upon prospective buyers, and has a tendency to discourage the latter to the general detriment of tax sales."

■ The attempted sale by the clerk, in this case, was for credit instead of cash, in violation of the notice and without authority of the board of county commissioners. It was void and did not confer upon the board authority to make the contract which it attempted to enter into with Shea for the sale of the land to him.

■ Sec. 61–1023 contains this provision:

"The property described in any delinquency entry may be redeemed from tax sale by the owner thereof, or any party in interest, on or after the fourth Monday of January after, and within three years from the date thereof, or until tax deed is issued to the county, and thereafter and up to the time a bid is made therefor at the public sale of such property, . . . . "

A bid, within the meaning of that statute, which will terminate the right of redemption is one made in conformity with the terms of the sale as authorized by the county commissioners and as advertised. The bid made by Mrs. Shea did not conform to the terms of sale so authorized and advertised and did not terminate appellant's right of redemption.

The trial judge found as a fact:

"That more than four years have elapsed since the plaintiff acquired knowledge of the facts which took place upon the sale of the property above set forth by Owyhee County to Myrtle H. Shea and John T. Shea."

The seventh conclusion of law is:

"That the plaintiff, Kathleen Kivett, was guilty of laches in that said action was not brought within a reasonable time after knowledge of the facts in regard to the sale of March 26th, 1932."

The evidence is undisputed that appellant did not have knowledge that the bid of Mrs. Shea and the sale to her of the property by the clerk was on terms of credit instead of cash until immediately prior to the commencement of the action. A record was made of the transaction whereby the board of county commissioners attempted to contract with John T. Shea for the sale and purchase of the land, and of that transaction appellant had record notice.

This is not a proper case for the application of the bar of laches. Mrs. Shea, representing herself and her husband, and the clerk of the board of county commissioners, representing the board and the county, by their conduct, led appellant and her agents to believe the sale was for cash and for more money than appellant had. Respondents are not in position to avail themselves of a delay on appellant's part in asserting her rights, which was caused, or contributed to, by their conduct.

The judgment and decree are reversed with directions that further proceedings be had in conformity with the views herein expressed. Costs are awarded to appellant.

Holden, Ailshie, Budge and Givens, JJ., concur.