768 P.2d 811

**Virgil JAHNKE, Plaintiff–Appellant,**

v.

**COUNTY OF BINGHAM, State of Idaho; J.A. Smith and Leora Smith, Defendants–Respondents.**

No. 17391.

Court of Appeals of Idaho.

Jan. 30, 1989.

Thomas J. Holmes, Hawley, Troxell, Ennis & Hawley, Pocatello, for plaintiff-appellant.

John A. Bailey, Jr., Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendant-respondent, Bingham County.

Defendants-respondents, J.A. Smith and Leora Smith, presented no argument in this appeal.

SMITH, Judge, Pro Tem.

This is a tax deed case. Virgil Jahnke seeks to set aside the issuance of a tax deed and the subsequent sale of real property which Jahnke had owned in Bingham County (County). Jahnke contends that the tax sale was illegal because the Bingham County treasurer was not authorized to issue a tax deed to the County. We affirm the district court's judgment upholding the tax deed and sale.

The essential facts of this case are as follows. In May, 1975, Jahnke purchased two adjoining tracts of land in Bingham County, described herein as lots 1 and 2. Jahnke received real property tax notices for the properties in 1975, 1976, and 1977. Jahnke timely paid his 1976 and 1977 property taxes, but he never paid the 1975 tax assessment.[1] In September, 1978, the Bingham County treasurer sent Jahnke notice of the pending issuance of a tax deed on the property. I.C. § 63–1134. The notice stated that unless Jahnke paid the 1975 tax assessment, the treasurer would issue a tax deed conveying lots 1 and 2 to the County. The notice was sent by registered mail. Jahnke's wife received the notice and acknowledged acceptance by endorsing a return receipt which was mailed back to the County. The treasurer also filed a statement with the county clerk describing the steps she had taken to notify Jahnke of the pending sale. *See* I.C. § 63–1135. However, the treasurer did not sign the statement. In January, 1979, the treasurer issued a tax deed to the County, and the County subsequently sold both lots to the respondents, J.A. and Leora Smith.[2] After the sale, Jahnke attempted to redeem the property by tendering a certified check to the treasurer in the amount of the 1975 tax assessment, plus penalty and interest. Jahnke's tender was refused because it was untimely. I.C. § 63–1124. Jahnke then instituted this action, attempting to have the tax sale declared null and void. On cross-motions for summary judgment,

---

1. The record does not reveal whether Jahnke and the previous property owner had entered into any agreement for payment of the 1975 tax assessment. As a result, we assume that Jahnke was obligated to pay the entire amount of the tax.

2. In the proceeding below, the district court held that the sale of lot 1 was invalid because the County had failed to comply with the notice procedure for sale of County property provided for in I.C. § 31–808. The County does not contest the district court's decision on appeal. Therefore, this action deals only with the tax sale of lot 2.

the district court upheld the sale as proper and awarded the property to the Smiths.[3]

■■■ Jahnke raises the following issues on appeal. First, he contends that the county treasurer lacked authority to issue the tax deed to the County. Second, Jahnke argues that he redeemed his 1975 tax delinquency when he paid his 1976 and 1977 tax assessment. Our standard of review on appeal from a summary judgment is well settled. We determine whether a genuine issue of material fact exists and, if not, whether the prevailing party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Hirst v. St. Paul Fire & Marine Ins. Co.,* 106 Idaho 792, 683 P.2d 440 (Ct.App. 1984). In this case, the facts surrounding issuance of the tax deed and sale of the real property in question are undisputed.[4] Where no material issue of fact exists, we exercise free review. *See Standards of Appellate Review in State and Federal Courts,* § 3.2, IDAHO APPELLATE HANDBOOK (Idaho Law Foundation, Inc., 1985).

I

We first discuss Jahnke's claim regarding the county treasurer's authority to issue the tax deed. At the time this action was commenced, issuance of a tax deed was governed by I.C. §§ 63–1101 to –1144.[5] Basically, this process involves the following steps. Upon entry of a tax delinquency notice on the county's real property assessment roll, the county is deemed to be the purchaser of the property on which taxes are owing, unless the property is redeemed from the tax sale by the current owner. *See* I.C. §§ 63–1114 and –1124. If the property is not redeemed within three years from the date of the delinquency entry, the county tax collector may deed the property to the county for subsequent sale. I.C. § 63–1127. However, the tax collector must notify the property owner of the pending issuance of the tax deed. I.C. § 63–1134. The tax collector must also file an affidavit with the county clerk showing compliance with the notice requirements. I.C. § 63–1135. Here, Jahnke contends that the county treasurer—acting as the County's ex officio tax collector—failed to satisfy this latter requirement because the statement she filed with the county clerk was not signed by her. *See Evans v. Poppie,* 51 Idaho 123, 4 P.2d 356 (1931). To the contrary, the County argues that the treasurer's statement, albeit without a signature, constituted substantial compliance with the notice requirements of I.C. § 63–1134, and therefore renders the issuance of the tax deed valid.

■■■ We agree with the County's interpretation of the notice requirements for issuance of a tax deed. The purpose of filing an affidavit under the statutes is to provide proof that a party who has defaulted on its property taxes has received notice of the pending issuance of a tax deed. *See Kivett v. Owyhee Co.,* 58 Idaho 372, 74 P.2d 87 (1937) (discussing I.C.A. §§ 61–1026 to –1028, predecessors of I.C. §§ 63–1133 to –1135). However, the county's authority to issue a tax deed is based upon the existence of facts proving compliance with the notice requirement of I.C. § 63–1134, rather than strict compliance with the affidavit requirement under I.C. § 63–1135. Substantial compliance is all that is required. *See Wasden v. Foell,* 63 Idaho 83, 117 P.2d 465 (1941); *Shail v. Croxford,* 54 Idaho 408, 32 P.2d 777 (1934); *Andrews v. North Side Canal Co.,* 52 Idaho 117, 12 P.2d 263 (1932). In this context, the affidavit is not a jurisdictional prerequi-

---

3. The Smiths did not attend the summary judgment proceedings either in person or through counsel. Their cross-complaint against the County and counterclaim against Jahnke were later dismissed. The Smiths took no part in this appeal.

4. Jahnke argues on appeal that, contrary to the *district* judge's finding, he never received a 1975 tax notice. However, this factual issue is immaterial because the focus of Jahnke's argument is whether he was properly notified of the pending issuance of a tax deed on his property in 1978 (See Section I, *infra* ).

5. I.C. §§ 63–1127, and –1133 to –1136, were repealed effective March 14, 1980, and replaced by I.C. §§ 63–1126A to –1126D. However, these sections are not applicable in the present dispute.

site to issuance of a valid tax deed; rather, it serves only as evidence that notice has been given. I.C. § 63–1135; *see Lowman v. Young*, 212 So.2d 88 (Fla.App.1968) (filing of proof of publication not a jurisdictional prerequisite to validity of a tax deed). Proof of notice can also be gleaned from other sources, including evidence showing that the property owner has actually received notification of the pending tax sale. *See Shail v. Croxford, supra*. We conclude that a tax deed may issue so long as the county treasurer substantially complies with the notice requirements of I.C. §§ 63–1134 and –1135. *See* 85 C.J.S. *Taxation* § 797 (1954 & 1988 Cum.Supp.).

In the instant case, it is uncontested that the County notified Jahnke of the pending issuance of a tax deed on Jahnke's property prior to its sale in 1979. It is also uncontested that Jahnke received a copy of the notice, as evidenced by his wife's signature on the return receipt which was mailed back to the County. As required by statute, the notice contained the year for which the taxes were delinquent, the date the delinquency entry was made, the names of the record owners at the time of the tax assessment, a description of the property in question and the date the deed would issue to the County. I.C. § 63–1134. Furthermore, the treasurer's statement properly specifies that the notice was sent to Jahnke, and incorporates by reference a copy of the attached notice. Although the treasurer's statement was not signed, the undisputed facts of this case unequivocally establish that Jahnke was aware that a tax deed would be issued on his property if he did not pay his delinquent 1975 tax assessment. This is the purpose of the notice requirement. In reaching our conclusion, we are mindful that, in *Evans v. Poppie, supra*, the Idaho Supreme Court held that a proper, correct and sufficient affidavit detailing the notice requirements is a jurisdictional prerequisite to the issuance of a tax deed. Jahnke argues that without the county treasurer's signature, the affidavit filed with the county clerk fails to meet this requirement. However, we note that the Court in *Evans* found that the affidavit in question in that case was void because

the defaulting property owner had not received any notice of the pending tax sale of his property. That is not the case here. We therefore hold, as a matter of law, that the County substantially complied with the notice requirements for the issuance of a tax deed.

## II

We next address Jahnke's argument regarding redemption of the 1975 tax delinquency. Jahnke contends that the County was obligated to apply Jahnke's 1976 and 1977 tax payments to his 1975 tax delinquency, rather than applying those payments to his then current tax assessments. Jahnke submits that if the County had done so, then his 1976 and 1977 tax payments would have acted as redemption of his 1975 tax delinquency, and the tax deed against his property would not have been issued. In posing this argument, Jahnke contends that I.C. §§ 63–1114, –1119, and –1124, when read *in pari materia*, mandate the County to take such action.

■ We disagree with Jahnke's interpretation of the statutes. The only statute cited by Jahnke which deals directly with the application of delinquent tax payments is I.C. § 63–1119. At the time of the tax sale, that statute read:

> Whenever a tax shall be delinquent for any year, the taxpayer may pay to the tax collector of the county wherein such tax is delinquent, one half of such delinquency for such year together with the penalty and interest thereon; provided, however, that such payment shall only be made and accepted upon the oldest delinquency standing on the records of the county tax collector wherein such payment is made and upon such payment the tax collector shall issue to the taxpayer a receipt for the sum so paid.

When this statute was in effect, as stated by Judge Herndon in his memorandum decision on Jahnke's motion for reconsideration in this case, the statute applied only to payments by taxpayers upon tax delinquencies and not to payments by taxpayers on taxes which were not delinquent. We

agree with Judge Herndon. It would seem obvious the Legislature would have enacted legislation to provide that tax payments for any year would apply first to oldest delinquencies if that was the Legislature's intent. Our research reveals no such statute in existence at the time of the sale.[6] Thus, as stated by Judge Herndon:

> The record reflects, and it is uncontroverted, that plaintiff's payments in 1976 and 1977 were of amounts identical to the amounts due for the tax years 1976 and 1977. That is, plaintiff was not paying upon tax *delinquencies*, but was paying upon taxes he believed to be due for the years 1976 and 1977. Because section 63–1119, I.C., does not apply to regular payments of 1976 and 1977 taxes by plaintiff, the tax collector had no duty to apply plaintiff's payments to delinquencies which existed upon the county records. [Emphasis original.]

Judge Herndon saw no error in the County's action, nor do we. Therefore, we hold, as a matter of law, that the County had no duty to apply Jahnke's 1976 and 1977 tax payments to his 1975 tax delinquency.

The summary judgment in favor of the County is affirmed. Costs to respondent, Bingham County. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.

---

**6.** I.C. § 63–1119 was amended in 1984 and now reads:

> Whenever a tax shall be delinquent for any year, the taxpayer may pay to the tax collector of the county wherein such tax is delinquent, one-half of such delinquency for such year together with the penalty and interest thereon; provided, however, that such payment *shall* only be made and accepted upon the oldest delinquency standing on the records of the county tax collector wherein such payment is made, *unless the taxpayer designates in writing that the payment be applied to current taxes or tenders the exact amount of current taxes. Payment shall then be applied against current taxes.* Upon payment of delinquent taxes the tax collector shall issue to the taxpayer a receipt for the sum so paid. In the event payment is mailed to the tax collector, the cancelled check may serve as receipt. [Emphasis added.]