826 P.2d 1333

**EXECULINES LIMITED, an Idaho Limited Partnership, Plaintiff–Counterdefendant–Appellant,**

v.

**TEL–AMERICA OF SALT LAKE CITY, INC., a Utah Corporation, Defendant–Counterclaimant–Respondent.**

No. 18860.

Court of Appeals of Idaho.

Dec. 23, 1991.

Rehearing Denied Feb. 11, 1992.

Petition for Review Denied April 6, 1992.

622

Cosho, Humphrey, Greener & Welsh, Boise, for appellant. William M. Loomis argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Paul C. Droz argued.

SILAK, Judge.

Execulines, Ltd., a provider of long-distance telephone services, sold its assets on August 6, 1986, to Tel–America, Inc., pursuant to a purchase agreement. In June 1987, Morrison–Knudsen Company, Inc., which had supplied Execulines with telephone service, informed the parties that its supplier, Mountain Bell, had agreed to issue a credit for telephone service. Part of the credit[1] pertains to telephone services purchased by Execulines from Morrison–Knudsen during the period prior to July 31, 1986, the date of Execulines' closing financial statement for purposes of the purchase agreement. A dispute arose between Execulines and Tel–America as to who owned this part of the credit, and this lawsuit ensued. On cross-motions for summary judgment, the district court ruled that $41,058.05 of the credit was an asset belonging to Tel–America under the purchase agreement. Execulines appeals from this judgment, and we reverse.

As a preliminary matter, we note our standard of review on an appeal from a summary judgment. Summary judgment shall be granted to the moving party "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). In this case, the facts are undisputed. Where no material issue of fact exists, we exercise free review. *Jahnke v. County of Bingham*, 115 Idaho 548, 768 P.2d 811 (Ct.App.1989).

The sole issue in this appeal is whether the district court erroneously interpreted the term "asset" in the written purchase agreement to include the credit. Our object in construing a contract is to ascertain and give effect to the intent of the parties. *Luzar v. Western Sur. Co.*, 107 Idaho 693, 697, 692 P.2d 337, 341 (1984); *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). To the extent that the terms of a contract are clear and unambiguous, their meaning and legal effect are questions of law to be determined by the court. *Galaxy Outdoor Advertising, Inc. v. Idaho Transp. Dept.*, 109 Idaho 692, 710 P.2d 602 (1985). In construing unambiguous terms, we ascertain the parties' intent from the language contained in the contract. *Suchan v. Suchan*, 106 Idaho 654, 682 P.2d 607 (1984).

In order to determine whether the credit is an asset as contemplated by the purchase agreement, we look at the definitions as recited in the agreement. The term "assets" is defined in section 1.4:

> *"Assets"* means all of the assets and property of [Execulines] *used in its business operations*, including but not limited to, the Customer Base, and all equip-

---

1. The total amount of the credit was $62,732.41. A portion of the credit related to a revised allocation of Morrison–Knudsen's August 1986 billing to Execulines, which both parties agreed belonged to Tel–America under the terms of the purchase agreement.

ment owned by [Execulines] and leased, loaned or used by the customers including all dialers and the books and records of [Execulines] pertaining to such customers as more specifically described on Exhibit "6" hereto. The Assets, however, specifically exclude [Execulines'] bank account at Idaho Bank & Trust designated "Trust Agreement" and the I.D.E.A. account receivable.

(Emphasis added.) Examining the plain meaning of the definition of "assets," we note that the unanticipated credit was not used in Execulines' business operations. On June 4, 1987, Morrison–Knudsen sent Execulines a letter informing Execulines for the first time of several retroactive credits for 1986 which Morrison–Knudsen had negotiated with Mountain Bell. Indeed, Tel–America, in its brief on appeal, conceded that the credit was not even in existence on July 31, 1986, the date of Execulines' closing financial statement. Thus, under this definition, the credit is not a described asset.

The purchase agreement also defines the term "current assets." In order to determine the final purchase price, the agreement allows adjustment for the amount by which the "current assets" exceeded or were less than the "current liabilities" as of July 31, 1986. Section 1.9 of the contract states:

> *"Current Assets"* means the sum of the following: (a) cash on hand, (b) the accounts receivable less all 90–day and 120–day past due accounts and less one-half of the 60–day past due accounts, except the accounts receivable attributable to I.D.E.A., (c) calls in process less 3% of said calls, (d) prepaid expenses, (e) non-trade receivables, including non-trade notes receivable, (f) the "book value" of the fixed assets and (g) the cash deposits, all as of July 31, 1986, as set forth in the Closing Financial Statements. For purposes of the above, "accounts receivable" shall include those accounts receivable which have been reduced to notes receivable, subject to the same adjustments described in Section 1.9(b) above.

There is no term under the definition of "current assets" which would include the credit. Under the terms of the agreement, Execulines agreed to sell defined assets. Looking at the intent of the parties as expressed by the language of the contract, the parties clearly did not contemplate including unforeseen credits to Execulines' account with Morrison–Knudsen for telephone services purchased before July 31, 1986, as "current assets."

In determining whether the credit was an asset included in the purchase, we look not only at the specific definitions of the contract, but also at the contract as a whole. Under Idaho law, in interpreting any provision in a contract, the entire agreement must be viewed as a whole. *St. Clair v. Krueger,* 115 Idaho 702, 705, 769 P.2d 579, 582 (1989). We note that the only assets specifically excluded from the transaction were the I.D.E.A. account receivable and the Idaho Bank & Trust account. However, Execulines had an ongoing dispute with Morrison–Knudsen concerning the billings for 1985, unrelated to the issuance of the subject Mountain Bell credit. Pursuant to section 2.4 of the purchase agreement, Execulines retains the benefit of any possible credit for the disputed 1985 billings:

> It is hereby acknowledged that there currently exists a dispute between Morrison–Knudsen and [Execulines] concerning the 1985 billings for services provided by Morrison–Knudsen. Said dispute involves approximately $53,000. The Current Liabilities assumed by Buyer include said $53,000. In the event said dispute is resolved, in whole or in part, in [Execulines'] favor, [Execulines] shall be entitled to any refund of amounts collected by Morrison–Knudsen in connection with said 1985 billings, or if Buyer has not yet paid Morrison–Knudsen at the time the dispute is resolved, [Execulines] shall be entitled to receive from [Tel–America] the amount of any reduction in said billing.

The dispute regarding the 1985 billings was eventually resolved in favor of Morrison–Knudsen and Tel–America paid the amount due. The language of section 2.4 indicates

that where the parties were aware of a potential credit for telephone services, their intent was that the credit, if realized, would be the property of Execulines. A similar intent may be imputed to the parties as to the unanticipated credit.

The failure specifically to exclude the unexpected credit from the named assets in the purchase agreement does not automatically lead to the conclusion that the credit was included in the assets to be sold. Moreover, the agreement contains no provision for the transfer to Tel–America of after-acquired assets. It is evident in examining the definitions, as well as section 2.4 regarding the potential credit for the 1985 billings, and from the absence of any clause concerning after-acquired assets, that the parties thought that they had accounted for all assets of the partnership. The contract reflects no intent to include, as an asset in the sale, an unanticipated credit for telephone services purchased by Execulines prior to the date of the closing financial statement. Because neither party was even aware of the potential credit, the sale of the credit as an "asset" of the partnership was not in the contemplation of the parties at the time the agreement was negotiated. Looking at the terms as defined by the contract and at the contract as a whole, we conclude that the credit was not an asset sold under the terms of the agreement. The district court therefore erred in its determination that the credit was an asset as defined by the purchase agreement. For this reason, we reverse the judgment of the district court.

We turn next to the issue of attorney fees on appeal. The contract in question contains a specific provision regarding attorney fees; section 16.2 of the purchase agreement states:

> *Recovery of Litigation Costs.* If any legal action or any arbitration or other proceeding whatsoever (including but not limited to administrative proceedings, insolvency or bankruptcy proceedings, proceedings for declaratory or injunctive relief, *appellate proceedings* or other litigation) is brought for the enforcement or *interpretation* of this Agreement, ... the prevailing party or parties *shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding,* in addition to any other relief to which it or they may be entitled. Such fees and costs shall include, but not be limited to, service of process costs, filing fees, arbitration, court and court reporter costs, investigation costs, expert witness fees and *fees and costs attributable to appellate review.* Such recovery shall be included in any judgment, award or final order in any such arbitration or proceeding. The "prevailing party or parties" means the party or parties determined by the arbitrator or court, as the case may be, to most nearly prevail and not necessarily the party or parties in whose favor a judgment, award or order is entered.

(Emphasis added.) In the present case, the sole issue in dispute was whether the credit was an asset as defined by the terms of the purchase agreement. Execulines has prevailed on this issue and is thus entitled to an award of attorney fees and costs in both the lower court and on appeal pursuant to section 16.2 of the contract. *See Bank of Idaho v. Colley,* 103 Idaho 320, 647 P.2d 776 (Ct.App.1982); *Industrial Investment Corp. v. Rocca,* 102 Idaho 920, 643 P.2d 1090 (Ct.App.1982); *Vaughn v. Vaughn,* 91 Idaho 544, 428 P.2d 50 (1967).

Because we reverse the judgment of the district court, we remand this case to the district court to redetermine the award of costs and attorney fees in a manner consistent with this opinion and with section 16.2 of the purchase agreement. Attorney fees and costs on appeal to Execulines, in accordance with I.A.R. 40 and 41.

WALTERS, C.J., and SWANSTROM, J., concur.