## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket Nos. 48489 & 48703

BRECKENRIDGE PROPERTY FUND 2016, LLC, a Delaware limited liability company

    Plaintiff-Appellant,

v.

WALLY ENTERPRISES, INC., a Kansas corporation dba WE SERVE IDAHO; WEINSTEIN & RILEY, P.S., a Washington professional corporation; CORNERSTONE PROPERTIES, LLC, an Idaho limited liability company

    Defendants-Respondents,

and

JOHN DOES 1-10, and CORPORATIONS XYZ,

    Defendants,

CORNERSTONE PROPERTIES, LLC, an Idaho limited liability company

    Cross-Claimant,

v.

WEINSTEIN & RILEY, P.S., a Washington professional corporation

    Cross-Defendant,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2022 Term

Filed: August 22, 2022

Melanie Gagnepain, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Bruce L. Pickett, District Judge.

The decision of the district court is affirmed in part and vacated in part.

Stover, Gadd & Associates, PLLC, Twin Falls, attorneys for Breckenridge Property Fund 2016, LLC. David Gadd argued.

Holden, Kidwell, Hawn & Crapo, PLLC, Idaho Falls, attorneys for Cornerstone Properties, PLLC. D. Andrew Rawlings argued.

Brassey Crawford, PLLC, Boise, attorneys for Wally Enterprises, Inc. Ryan Janis argued.

---

BEVAN, Chief Justice

This appeal is about the legality of an auctioneer providing the terms of sale at the time of the foreclosure sale, including acceptable methods of payment, without providing earlier notice to potential bidders. Andrew Ashmore, agent for appellant Breckenridge Property Fund 2016, LLC, ("Breckenridge") arrived at a foreclosure sale with endorsed checks to support Breckenridge's bid. Jesse Thomas, agent for Cornerstone Properties, LLC, ("Cornerstone") was also present. Before the auction, the auctioneer provided Ashmore and Thomas a packet of paperwork. The last page contained a requirement that endorsed checks would not be accepted as payment for a bid. Because Ashmore only had endorsed checks, the auctioneer gave Ashmore one hour to cure the payment defect, but the auction eventually proceeded with Ashmore unable to secure a different form of payment. The property ultimately sold to Cornerstone. Breckenridge filed a complaint against the two respondents and a third defendant, alleging: (1) violations of Idaho Code section 45-1506; (2) estoppel; and (3) negligence/negligence per se, seeking mainly to void the sale to Cornerstone. Breckenridge also recorded a lis pendens against the property. The district court ultimately entered summary judgment for all defendants and quashed the lis pendens. Breckenridge timely appealed to this Court. We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Weinstein & Riley, P.S., a Washington professional corporation ("W&R") was the trustee for property subject to a deed of trust in Ammon, Idaho (Bonneville County).[1] W&R posted notice of the foreclosure sale and scheduled the auction for June 19, 2020, at 1:00 p.m. in Idaho Falls, Idaho. W&R hired Gary's Processing Service ("Gary's") to assist with the sale. Gary's

---

[1] W&R is not participating in this appeal.

subcontracted with Wally Enterprises, Inc., a Kansas corporation doing business as We Serve Idaho ("Wally") to hire an auctioneer and post notice of the sale on its website. Wally hired Kathy Cook, an independent contractor, as the auctioneer. Before the sale, Wally posted notice of the property's location along with the date, time, and location of the sale on its website. The information on the website gave no other details about the sale, nor did it include any restrictions or information about the form of payment that would be accepted.

Breckenridge is a Delaware limited liability company. It buys real property at foreclosure sales, improves the property, and then sells it for a profit. On the date of the foreclosure sale, Ashmore attended the public auction as an agent for Breckenridge. Before the sale, Breckenridge had given Ashmore cashier's checks in various amounts made payable to an entity affiliated with Breckenridge. If Breckenridge turned out to be the highest bidder, Ashmore planned to endorse and deliver the cashier's checks to the trustee as payment. Ashmore confirmed the date, time, and location of the auction by emailing W&R the day before the sale. Ashmore also visited the auctioneer's website and noted no restrictions on payment methods listed.

When Ashmore arrived at the sale, Cook provided him with a packet of documents that included a payment condition for the auction: "NO ENDORSED CHECKS[.] CHECKS MADE PAYABLE TO WEINSTEIN & RILEY PS." (Capitalization in original). Ashmore objected to this condition. He had no checks from Breckenridge that were payable to W&R. As a result, Cook agreed to postpone the auction for one hour so Ashmore could attempt to remedy the situation. Breckenridge failed to obtain checks payable to W&R in the time available. As a result, Ashmore was not able to register to bid.

At about 2:00 p.m., Cook went ahead with the auction. At the time, Thomas and Ashmore were the only people in attendance. The opening bid from Cook was $194,000. Thomas bid $194,001. Ashmore tried to bid $195,000, but Cook would not acknowledge his bid. Thus, Cornerstone was the winning bidder at the auction. Thomas gave Cook a $200,000 certified check payable to W&R for the property. W&R later executed a trustee's deed conveying the property to Cornerstone. W&R refunded Cornerstone $5,999.00.

## B. Procedural Background

On June 24, 2020, Breckenridge recorded a lis pendens against the property. Breckenridge also filed a complaint against Cornerstone, Wally, and W&R alleging violations of Idaho Code section 45-1506, and claims for estoppel, negligence/negligence per se, and attorney fees. Each

3

defendant answered the complaint. Cornerstone included a counterclaim, crossclaim, and demand for jury trial. Relevant to this appeal, Cornerstone counterclaimed against Breckenridge seeking a declaratory judgment or to quiet title. On August 24, 2020, Cornerstone recorded its deed in Bonneville County.

Cornerstone moved for judgment on the pleadings and to quash the lis pendens. In response, Breckenridge moved for summary judgment on Count I of its complaint (violation of Idaho Code section 45-1506 by Wally and W&R) and Claim I of Cornerstone's crossclaim (breach of contract against W&R for failing to convey the property to Cornerstone). W&R joined in opposing Breckenridge's motion for summary judgment. Wally also filed a cross-motion for summary judgment and an opposition to Breckenridge's motion for summary judgment.

The district court ultimately granted partial summary judgment to Cornerstone and certified the judgment as final under Idaho Rule of Civil Procedure 54(b). On December 4, 2020, Breckenridge timely filed its first notice of appeal. Soon after, the district court granted Wally's motion for summary judgment and entered judgment dismissing Breckenridge's claims against Wally. Both Cornerstone and Wally moved for attorney fees and costs against Breckenridge, which the district court granted over Breckenridge's objections. After entry of amended judgments in favor of Cornerstone and Wally, Breckenridge filed its amended second notice of appeal.

## II. ISSUES ON APPEAL

1. Did the district court err in concluding the trustee's agent had the discretion to reject Breckenridge's bid?

2. Did the district court err in concluding that W&R and Wally complied with the provisions of Idaho Code section 45-1506?

3. Did the district court err in concluding that it could not set aside the sale?

4. Did the district court err in dismissing Breckenridge's claims of estoppel, negligence, and negligence per se?

5. Did the district court err in awarding attorney fees to Cornerstone and Wally under Idaho Code section 12-120(3)?

6. Are any of the parties entitled to attorney fees on appeal?

## III. STANDARDS OF REVIEW

"After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings." I.R.C.P. 12(c). On such a motion, "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Idaho Rule of Civil Procedure] 56 [where] [a]ll parties must be given a reasonable

opportunity to present all the material that is pertinent to the motion." I.R.C.P. 12(d). "A judgment on the pleadings is reviewed under the same standard as a ruling on summary judgment." *Elsaesser v. Gibson*, 168 Idaho 585, 590, 484 P.3d 866, 871 (2021) (quoting *State v. Yzaguirre*, 144 Idaho 471, 474, 163 P.3d 1183, 1186 (2007)).

"This Court employs the same standard as the district court when reviewing rulings on summary judgment motions." *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136–37 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140–41, 456 P.3d 201, 209–10 (2019)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id* (quoting I.R.C.P. 56(a)). "A moving party must support its assertion by citing particular materials in the record or by showing the 'materials cited do not establish the. . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s].'" *Id* (quoting I.R.C.P. 56(c)(1)(B)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Owen*, 168 Idaho at 641, 485 P.3d at 137 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). A "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id*.

This Court exercises free review over questions of law, which includes whether the district court correctly determined that a case is based on a "commercial transaction" for the purpose of Idaho Code section 12-120(3). *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 470, 36 P.3d 218, 222 (2001).

## IV. ANALYSIS

### A. The district court correctly concluded that W&R and Wally properly rejected Breckenridge's bid.

Breckenridge argues the district court erred in holding that W&R and Wally could refuse to accept Breckenridge's bid. From this, Breckenridge puts forth two ancillary arguments. First, Breckenridge claims *Kivett v. Owyhee Cnty.*, 58 Idaho 372, 74 P.2d 87 (1937), which the district court partly relied on below, does not support the court's findings. Second, Breckenridge argues the district court erred in holding it was not reasonable to require W&R and Wally to allow Breckenridge forty-eight hours to pay for its bid. For the reasons below, we affirm the district court's decision.

*1.* Kivett v. Owyhee County *supports the district court's decision.*

In the district court's memorandum decision on Breckenridge's motion for summary judgment, the court held a trustee at a nonjudicial foreclosure sale could reject a bid based on terms announced at the beginning of the sale. The district court based its analysis, in part, on this Court's decision in *Kivett*. The district court concluded *Kivett's* rationale supported its interpretation of Idaho Code section 45-1506(8) that the printed conditions of a sale are binding on the buyer and seller at a public auction. The district court also concluded that notice of the payment condition is not required before the auction. Breckenridge maintains the conditions the trustee imposed improperly restricted who could bid at the sale. We disagree. The conditions announced at the sale limited the *form* of the bid—not the *bidder*. The *terms* of a bid—if any—that the trustee must accept are the issue here. We have addressed this before in *Kivett*, though under a different statutory provision.

In *Kivett*, this Court considered whether the sale of property at a public auction on credit was valid when the sale was advertised to occur in cash. The statute at issue in *Kivett* required notice to the homeowner that property deeded to the county because of delinquent taxes would be auctioned so the owner could exercise the right of redemption. *Id.* at 375, 74 P.2d at 88. The clerk who conducted the sale for the county commissioners was aware of the cash payment term and orally noted the requirement for cash bids before the auction. *Id.* The winning bidder, however, made a credit bid for $1,660.00 to be paid in installments, which the clerk accepted. *Id.* Kivett, the property owner, challenged the sale, ultimately before this Court, arguing the sale was invalid under Idaho Code sections 30-708, 30-712 and 30-713. Kivett claimed she had $1,000 in cash and argued if she were allowed to bid on credit, she would have had another $5,000 to bid on the property. *Id.* at 379, 74 P.2d at 90. This Court agreed with Kivett's argument and vacated the sale. *Id.* at 383, 74 P.2d at 92. The Court held the sale violated the statute because the county commissioners did not authorize the terms of the sale under which it occurred and concluded it violated public policy because the bidders were not bidding on equal terms. *Id.* at 381, 74 P.2d at 91.

In the *Kivett* decision, this Court adopted language from the *Corpus Juris,* which explains:

> (19) Printed conditions under which a sale proceeds are binding on both buyer and seller, and cannot be varied, although they may be explained by verbal statements of the auctioneer made at the time of the sale. Thus an auctioneer may, at the time of the sale, explain the meaning of advertisements published before the sale.

6

(20) *The conditions of a public sale, announced by the auctioneer at the time and place of the sale, are binding upon a purchaser, whether he knew them or not.* So also, where it is the custom to post up the conditions in the auctioneer's room, and the auctioneer announces that the conditions are as usual, a purchaser is bound by the conditions, whether he sees them or not.

*Kivett*, 58 Idaho 372, 383, 74 P.2d at 91 (quoting 6 C.J. 827, 828, §§ 19 and 20) (emphasis added).

While *Kivett* addressed a different statutory provision than the section at issue here, the above referenced language this Court adopted speaks to the broader circumstances at play during a public auction. This Court adopted the language that specifies "conditions of a public sale, announced by the auctioneer at the time and place of the sale, are binding upon a purchaser, whether he knew them or not." *Id*.

At the sale here, which was public, Cook handed out a packet to Ashmore and Thomas that contained the payment conditions *before* the auction began; those were the terms of the sale announced by the auctioneer at the time and place of the sale. Those terms complied with *Kivett* because they were announced before the sale and were, therefore, binding on Breckenridge. Although Cook gave Ashmore time to secure a form of payment that complied with the conditions of the sale, Breckenridge's failure to obtain the proper form of payment, whether it had notice of the condition or not, does not negate the binding nature of the term.

The district court properly applied *Kivett* to illustrate how this Court has analyzed payment conditions at public auctions. The district court analyzed the facts under the relevant statute and ultimately rejected Breckenridge's interpretation of Idaho Code section 45-1506(8). The district court's reliance on *Kivett* was correct, and Breckenridge failed to put forth an argument explaining why the decision from the district court was erroneous, aside from an effort to distinguish *Kivett* on its facts.

Consistent with our adoption of sections 19 and 20 of *Corpus Juris* in *Kivett*, the printed conditions of the foreclosure sale were binding on Breckenridge when announced by the auctioneer, whether Breckenridge knew of the conditions beforehand or not. Breckenridge has alleged no other failure in relation to the pre-sale procedure. For these reasons, we conclude the district court did not err.

> 2. *The district court did not err in holding it would have been unreasonable to require W&R and Wally to allow Breckenridge 48 hours to pay for its bid.*

Breckenridge also argues the district court erred in concluding it would have been unreasonable to require W&R and Wally to allow Breckenridge forty-eight hours to pay its bid.

7

Breckenridge contends the district court inaccurately characterized its position when it concluded, "[t]o infer that section 45-1506(9) somehow limits the trustee's discretion to require bidders to provide acceptable payment on the day of the auction is unreasonable." Breckenridge maintains it was not arguing that trustees could not require acceptable payment on the date of the auction, but the trustee must advertise before the sale what payment methods will be accepted. If the trustee does not advertise what payment methods are accepted before the sale, Breckenridge contends the winning bidder must be afforded reasonable time to pay the bid.

Cornerstone urges this Court to adhere to the strict application of unambiguous statutes, arguing that Idaho Code section 45-1506 unambiguously specifies the necessary contents of the notice of sale. To that end, Cornerstone contends there is no cause for this Court to add "any restriction on the form of payment" to the statute's notice requirements. It is the role of the legislature—not this Court—to craft additional requirements about how such notice is provided. Wally adds, based on the plain and unambiguous language in Idaho Code section 45-1506(9), the district court properly determined Breckenridge's request to delay the sale for forty-eight hours to obtain alternative payment contradicted the plain language of the statute.[2] Instead, Wally posits that the language in the statute, which requires that the purchaser "shall forthwith pay the price bid," is unambiguous, and urges this Court to adhere to its plain meaning.

> The interpretation of a statute must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written. We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature.

*Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (internal quotations and citations omitted). "Ambiguity occurs where reasonable minds might differ as to interpretations." *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 307, 312, 109 P.3d 161, 166

---

[2] Breckenridge argues for the first time in its Reply Brief that section 45-1506(9) is ambiguous. This Court "'will not consider arguments raised for the first time in the appellant's reply brief.'" *Bell v. Idaho Dept. of Lab.*, 157 Idaho 744, 749, 339 P.3d 1148, 1153 (2014) (quoting *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). "'A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief.'" *Id.* (quoting *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005)).

(2005) (internal citation omitted). "However, ambiguity is not established merely because the parties present differing interpretations to the court." *Id*.

The district court explained in its memorandum decision that Cook was not required to accept bids from Breckenridge "where it did not have checks that conformed to the payment conditions for the auction." The court continued that "[u]nder Breckenridge's interpretation [of Idaho Code section 45-1506(9)], the trustee would be required to accept bids from any person alleging that they could provide conforming payments for property sold at an auction in the future."

On appeal, Breckenridge claims that its position to allow reasonable time to secure adequate payment reflects the spirit of section 45-1506, which requires the high bidder to "forthwith pay the price bid[.]" Because no Idaho cases interpret the meaning of "forthwith," Breckenridge proposes this Court look to *United States v. Bradley*, 428 F.2d 1013 (5th Cir. 1970) for guidance. There, that court explained "forthwith" was "deliberately undefined…to allow courts to interpret it in the context of 'reasonableness,' on a case-by-case basis." *Id*. at 1015–16. The Fifth Circuit decided "'forthwith' requires no more or less than reasonable promptness, diligence or dispatch[.]" *Id*. While Breckenridge concedes Cornerstone had the funds on hand, it contends it would have taken Breckenridge forty-eight hours to satisfy W&R's requirement to obtain cashier checks payable to W&R. As a result, Breckenridge argues it satisfied the statutory requirement to "forthwith pay the price bid," and the district court erred in holding it was not entitled to sufficient time to tender payment.

Breckenridge's position is unavailing for two reasons. First, *Bradley* is distinguishable from the facts here. In *Bradley*, the Fifth Circuit considered whether officers validly executed a search warrant when the officers delayed the search, despite the warrant's requirement that officers search "forthwith" for the wanted person. *Id.* at 1016. The Fifth Circuit rejected a rigid test that required the search warrant to be executed in ten days, holding that "[Federal] Rule [of Criminal Procedure] 41(d) sets a maximum time within which a warrant must be executed and returned; and the 'forthwith requirement…usually requires…less than this ten-day period." *Id.* In the context of the timing of a search, there are few circumstances in which rigid rules are proper. But here, the context with which the legislature used the term "forthwith" was to tender payment at an auction. The whole premise of the statute is to ensure immediate closure to resolve the uncertain status of the property. Indeed, the nature of these proceedings is that of expediency, which is why, unlike its judicial foreclosure counterpart that permits a one-year right to redemption, "a deed of trust

9

affords a creditor the right to nonjudicial foreclosure and a shorter 120-day period of cure[.]" Kelly Arthur Anthon, *Buyer (& Debtor) Beware*, 50 THE ADVOCATE 28 (2007) (citing I.C. §§ 45-1503, 45-1506, 45-1508, 11-401, 11-402). That said, "[t]he procedures to foreclose on trust deeds outside of the judicial process provide the *express-lane alternative* to foreclosure in the judicial system[.]" *Fed. Home Loan Mortg. Corp. v. Appel*, 143 Idaho 42, 46 n.1, 137 P.3d 429, 433 n.1 (2006) (emphasis added). Thus, "forthwith" as used in section 45-1506 does not embrace Breckenridge's suggestion that a 48-hour delay to secure funds should have been permitted.

Second, we reject Breckenridge's position because, as stated above, interpreting a statute begins with its literal words. *Verska*, 151 Idaho at 893, 265 P.3d at 506. No matter how other courts have interpreted "forthwith," this Court must give the word its "plain, usual, and ordinary meaning" and, if that definition is unambiguous, the Court "does not construe it, but simply follows the law as written." *Id*.

In short, this Court first examines the literal words of section 45-1506 to determine whether they support the parties' differing interpretations. Section 45-1506 provides:

> The purchaser at the sale shall forthwith pay the price bid and upon receipt of payment the trustee shall execute and deliver the trustee's deed to such purchaser, provided that in the event of any refusal to pay purchase money, the officer making such sale shall have the right to resell or reject any subsequent bid as provided by law in the case of sales under execution.

I.C. § 45-1506(9). In this setting, the statute does not support Breckenridge's interpretation. The plain meaning of "forthwith" is "[i]mmediately; without delay[.]" *Forthwith*, BLACK'S LAW DICTIONARY (11th ed. 2019). As Cornerstone and Wally argue, even under a liberal definition, the term must account for the circumstances of its application. Indeed, within the context of a trustee's sale, a delay long enough to retrieve a pen and write a check would be "forthwith"; a delay of forty-eight hours is not. *See Fed. Home Loan Mortg. Corp.*, 143 Idaho at 46 n.1, 137 P.3d at 433 n.1 (discussing the express nature of nonjudicial foreclosures); *Trotter v. Bank of New York Mellon*, 152 Idaho 842, 847, 275 P.3d 857, 862 (2012) ("a trustee may initiate nonjudicial foreclosure proceedings on a deed of trust without first proving ownership of the underlying note or demonstrating that the deed of trust beneficiary has requested or authorized the trustee to initiate those proceedings.").

Therefore, we hold the district court did not err in concluding W&R was not required to either (1) accept Breckenridge's bid or (2) give Breckenridge forty-eight hours to remit proper payment.

**B.**   **The district court did not err in concluding that Wally and W&R complied with the requirements of Idaho Code section 45-1506 by selling the property to Cornerstone.**

Breckenridge alleges W&R and Wally violated the requirements of section 45-1506 that the property be sold to the highest bidder and violated its duty to get the highest price for the property. Breckenridge asserts that, when read together, two sentences in Idaho Code section 45-1506 create simple requirements for the conduct of a sale: (1) "anyone may bid at the sale," and (2) "the property must be sold to the highest bidder." Breckenridge argues these requirements are absolute and the trustee must comply with them because, otherwise, the property could sell for less than the highest bid, which violates the trustee's duty.

We first start with the language of Idaho Code section 45-1506(8). The statute, in pertinent part, provides:

> (8)  The sale shall be held on the date and at the time and place designated in the notice of sale or notice of rescheduled sale as provided in section 45-1506A, Idaho Code, unless the sale is postponed as provided in this subsection or as provided in section 45-1506B, Idaho Code, respecting the effect of an intervening stay or injunctive relief order. The trustee shall sell the property in one (1) parcel or in separate parcels at auction to the highest bidder.

I.C. § 45-1506(8).

The issue at the sale was with the form of Breckenridge's bid. Nothing in this subsection, or anywhere else under section 45-1506, requires a trustee to accept every bid made. But Breckenridge maintains that, despite arriving with endorsed checks and being unable to register as a bidder, it was the highest bidder at the sale. We disagree. Before the auction begins, trustees can impose reasonable restrictions on the acceptable forms of payment in which a bid can be made at a trustee's sale. *Kivett*, 58 Idaho at __, 74 P.2d at 91. Breckenridge's claim that it was the highest bidder disregards the undisputed fact that it was unable to make a qualifying bid.

Below, the district court explained, "Breckenridge was not recognized to bid based on its inability to obtain checks on the day of the sale that conformed to the payment conditions set for the sale. Cornerstone was the only recognized bidder at the sale, and the auctioneer accepted Cornerstone's bid as the highest bid." Breckenridge acknowledged this when it moved for summary judgment: "Had Cook not ignored Ashmore's bid and *Breckenridge been recognized as*

11

*the highest bidder*, Ashmore could have delivered to Cook checks payable to W&R within two (2) business days, if not sooner." (Emphasis added).

Because Breckenridge failed to establish it was registered to bid, let alone the high bidder, we affirm the district court's decision that Wally and W&R complied with Idaho Code section 45-1506 in selling Cornerstone the property.

**C.      The district court did not err by refusing to set aside the sale.**

Breckenridge broadly contends the district court erred in refusing to set aside the sale. As part of this argument, Breckenridge also asserts that Idaho Code section 45-1508 authorizes the district court to set aside a trustee's sale when the trustee violated that section and when the purchaser was not a "purchaser in good faith for value."

Under Idaho Code section 45-1508: "any failure to comply with the provisions of section 45-1506, Idaho Code, shall not affect the validity of a sale in favor of a purchaser in good faith for value at or after such sale, or any successor in interest thereof." This provision makes clear that a trustee's sale to a good-faith purchaser for value is final, despite a violation of Idaho Code section 45-1506.

Discussing the sale of property at a trustee's sale, this Court has explained "the sale is final once the trustee accepts the bid as payment in full unless there are issues surrounding the notice of the sale." *Spencer v. Jameson*, 147 Idaho 497, 504, 211 P.3d 106, 113 (2009). This finality, echoed in Idaho Code section 45-1508, refers to *actual* notice, and it serves "the legislature's interest in preserving the finality of title to real property." *Id*. As for Idaho Code section 45-1506, "it is more reasonable to infer that the legislature did not intend for a sale to be set aside once the trustee accepts the credit bid as payment in full." *Id*. at 504, 211 P.3d at 113. As a result, "the sale is final once the trustee accepts the bid as payment in full unless there are *issues surrounding the notice of the sale* (which are admittedly not present in this case). This interpretation promotes the legislature's interest in preserving the finality of title to real property." *Id*. (emphasis added). The issues surrounding the notice of the sale, referenced in *Spencer*, refers to actual notice, not the form of the notice.

Breckenridge claimed no defects in the notice of sale. It alleges only that W&R did not provide sufficient notice of the payment restrictions, which is not required by section 45-1506. Section 45-1508, as its title verifies, promotes finality. Even if section 45-1506 were violated, the

12

sale remains final. There was no such violation here and therefore whether Cornerstone was a purchaser in good faith for value is immaterial and we need not reach that issue.

**D.    The district court did not err in dismissing Breckenridge's claims against Wally for negligence, negligence per se, and equitable estoppel.**

Breckenridge argues the district court erred in dismissing its claims against Wally for negligence, negligence per se and estoppel. Breckenridge challenges two aspects of this portion of the district court's decision on appeal. First, Breckenridge asserts the district court erred in dismissing its negligence claims by holding W&R and Wally did not violate Idaho Code section 45-1506. Second, Breckenridge argues the district court erred in dismissing its estoppel claims because it argues Wally had to give prior notice of the payment terms and the district court's ruling is contrary to public policy because it allows a trustee to accept less than the highest bid for the subject property. For the reasons below, we hold the district court did not err in dismissing Breckenridge's claims against Wally.

*1.    The district court's decision to dismiss Breckenridge's negligence and negligence per se claims is affirmed.*

Breckenridge argues the district court's decision to dismiss its claims for negligence and negligence per se was erroneous because a trustee has a duty to provide advance public notice of the terms of the sale, and W&R and Wally failed to do so. Wally responds that it complied with the statutory notice requirements and carried out the terms of the sale set by W&R.

To show common law negligence, a party must prove:

> (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." [] Self-evident in the formulation of these elements is that a party cannot be held liable for negligence when there was no legal duty imposed under the circumstances.

*Oswald v. Costco Wholesale Corp.*, 473 P.3d 809, 819, 167 Idaho 540, 550 (2020) (citing *Stevens v. Fleming*, 116 Idaho 523, 525, 777 P.2d 1196, 1198 (1989). "[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence per se." *O'Guin v. Bingham Cnty.*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005) (internal quotations omitted). "Establishing negligence per se through a violation of a statute or regulation conclusively establishes the first two elements of a cause of action in negligence*." Obendorf v. Terra Hug Spray*

13

*Co., Inc.*, 145 Idaho 892, 898, 188 P.3d 834, 840 (2008) (citing *O'Guin*, 142 Idaho at 52, 122 P.3d at 311).

Below, the district court dismissed Breckenridge's negligence/negligence per se claim against Wally after concluding that W&R and Wally had not violated section 45-1506. The district court determined that because W&R and Wally had not violated that section, Breckenridge could not prove its claim of negligence or negligence per se because Wally had breached no duty to Breckenridge.

Breckenridge alleged the following as to its negligence claim:

50. Pursuant to Idaho Code § 45-1506, W&R and Wally owed a duty to Breckenridge to acknowledge Breckenridge's bid and convey title to the Subject Property to Breckenridge.

51. W&R and Wally have breached their duty to Breckenridge, which breach has directly and proximately cause Breckenridge to incur damages in an amount to be proven at trial, but which exceed $10,000.

While we have already held that the district court did not err in ruling against Breckenridge on its claim that W&R and Wally violated Idaho Code section 45-1506, the district court built on that reasoning in its memorandum decision on negligence. The district court evaluated the respective duties that Wally had once it became clear that Breckenridge did not have available means of payment that complied with the sale conditions. The court explained, "proceeding with the auction was not a violation of section 45-1506 because Breckenridge could not provide payment in an acceptable form. Wally was not required to accept bids from Breckenridge[ ] simply because Breckenridge attended the sale." The district court concluded that without a violation of Idaho Code section 45-1506, there could be no breach of a duty owed to Breckenridge:

Since Wally did not violate Idaho Code section 45-1506, it cannot establish its claim for negligence/negligence per se. Breckenridge argues that section 45-1506 sets forth the statutory duty for its negligence claim. However, Breckenridge cannot demonstrate that Wally violated a statutory duty contained in section 45-1506. Breckenridge also has not argued nor demonstrated that Wally violated any specified common law duty owed to Breckenridge. Where the [c]ourt has found that Wally did not violate Idaho Code section 45-1506, Breckenridge's basis for its negligence/negligence per se claims also fail. Thus, the [c]ourt finds even when construing the undisputed evidence in favor of the non-moving party, Breckenridge cannot establish its claims for negligence/negligence per se against Wally.

We agree with the district court's analysis. Breckenridge cannot show a violation of section 45-1506 to establish negligence per se and it has not shown Wally owed any common law duty to

14

it to support its claim for negligence. Accordingly, the district court's decision dismissing Breckenridge's claim for negligence and negligence per se is affirmed.

> 2. *The district court's decision dismissing Breckenridge's equitable estoppel claim is affirmed.*

Breckenridge next claims the district court erred in dismissing its claim of equitable estoppel because it is the trustee's duty to give public notice of the terms of the sale, and that the prospective bidder has no obligation to inquire into each term that may be imposed. Breckenridge posits that such a requirement unfairly advantages those who guess the correct questions over those who do not, which contradicts the policy established by the legislature and this Court.

The elements of equitable estoppel are as follows:

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 548–49, 314 P.3d 593, 603–04 (2013) (quoting *Ogden v. Griffith*, 149 Idaho 489, 495, 236 P.3d 1249, 1255 (2010)).

The doctrine of equitable estoppel "assumes the existence of a complete agreement," which is not unenforceable as vague or incomplete. *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 367, 109 P.3d 1104, 1109 (2005). Failing to establish even one element subjects the claim to dismissal at summary judgment. *See Idaho Title Co. v. American States Ins. Co.*, 96 Idaho 465, 468, 531 P.2d 277, 230 (1975). The district court explained below:

> The undisputed facts show that Wally did not make a false representation or conceal the payment conditions from Breckenridge. First, there is no allegation or evidence showing that Wally's notice contained false statements about the payment conditions. The notice did not say that the sale did not have any payment conditions. . . . Idaho law does not require the conditions for a sale to be posted in the notice for a public sale of a deed of trust. The conditions may be provided to potential bidders at the time and place of the sale. Thus, even in construing all reasonable inferences in favor of the non-moving party, Breckenridge cannot establish that Wally made any misrepresentation to Breckenridge.
>
> Breckenridge also cannot show that information about the payment conditions was concealed by Wally. As set forth above, the public notices posted by Wally were not varied from the notice it received from W&R. Wally was not required to provide advance[ ] notice of the payment conditions for the sale. Breckenridge also did not contact Wally regarding the existence of any conditions. Thus, even when drawing

15

all reasonable inferences in favor of the non-moving party, the Court finds that Breckenridge cannot establish that Wally concealed facts about the payment conditions from Breckenridge. Therefore, the Court finds that Breckenridge cannot establish its estoppel claim against Wally.

On appeal, Breckenridge makes no argument that addresses the elements of equitable estoppel. Breckenridge does not suggest Wally made a false representation nor does it contend it could not discover the purchase conditions. To the contrary, as Wally notes on appeal, "the actions of [Cornerstone's agent] unequivocally demonstrated through relatively minimal efforts in reading the sale website and contacting Wally[,]" Breckenridge could discover the purchase conditions. Thus, Breckenridge has failed to establish either of these elements was met here.

Beyond that, Breckenridge provided no argument to support why the district court's decision to dismiss its claim for estoppel against Wally was in error. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("A general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue."). Accordingly, we affirm the district court on this ground as well.

**E.      The district court abused its discretion in awarding attorney fees to Cornerstone and Wally under Idaho Code section 12-120(3).**

Breckenridge next argues the district court erred in awarding attorney fees to Cornerstone and Wally. Breckenridge contends there was no commercial transaction alleged between the parties nor was recovery sought based on a commercial transaction. Since the opposing parties are only indirectly related, Breckenridge argues that section 12-120(3) does not provide a basis for attorney fees.

Cornerstone responds that the district court correctly awarded attorney fees under Idaho Code section 12-120(3) because the gravamen of Breckenridge's case was a commercial transaction relating to the sale of the property. Cornerstone submits that the district court appropriately exercised its discretion. Wally similarly claims that there "should be no dispute" that a commercial transaction was at the very "center and heart of this lawsuit."

The awarding of attorney fees and costs is within the discretion of the district court and is subject to the abuse of discretion standard of review. *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 140, 357 P.3d 863, 865 (2015). When this Court considers whether the district court abused its discretion, it applies a four-part test: (1) whether the court correctly perceived the issue as discretionary; (2) whether the court acted within the outer boundaries of its discretion; (3)

16

whether the court acted consistently with the legal standards applicable to the specific choices available; and (4) whether the district court reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

"[I]n any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." I.C. § 12-120(3). Under the statute, "[a] court must award attorney fees to the prevailing party in an action to recover on a 'commercial transaction.'" *Troupis v. Summer*, 148 Idaho 77, 81, 218 P.3d 1138, 1142 (2009) (citations omitted). In this context, "[t]he term 'commercial transaction' is defined to mean all transactions except transactions for personal or household purposes." I.C. § 12-120(3).

> "[W]hether a party can recover attorney fees under Idaho Code section 12-120(3) depends on whether the gravamen of a claim is a commercial transaction." *Stevens v. Eyer*, 161 Idaho 407, 410, 387 P.3d 75, 78 (2016). "A gravamen is 'the material or significant part of a grievance or complaint.' " *Id*. (quoting Merriam Webster's Collegiate Dictionary 509 (10th ed. 1993)). "[C]ourts analyze the gravamen claim by claim." *Id*. (citation omitted). "To determine whether the significant part of a claim is a commercial transaction, the court must analyze whether a commercial transaction (1) is integral to the claim and (2) constitutes the basis of the party's theory of recovery on that claim." *Id*. (citation omitted).

*SilverWing at Sandpoint, LLC v. Bonner Cnty.,* 164 Idaho 786, 799–800, 435 P.3d 1106, 1119–20 (2019).

We begin by noting that this Court's jurisprudence on Idaho Code section 12-120(3) has left reason for confusion in this facially straightforward area of the law. Over the years our cases have continued to focus on the standards set forth above, while reaching divergent outcomes. For example, under one line of cases, "the test is whether the commercial transaction comprises the gravamen of the *lawsuit*." *Simono v. House*, 160 Idaho 788, 792, 379 P.3d 1058, 1062 (2016) (citing *E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990) (emphasis added)); *see also Brower v. E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990) (first pronouncing that "the test is whether the commercial transaction comprises the gravamen of the lawsuit."). In line with this analysis, this Court in *Garner v. Povey*, held that a case involving claims of wrongful interference with easement rights and wrongful conveyance of real property to a third party were treated as commercial because the plaintiffs had asserted a commercial transaction as "an actual basis of the complaint. . . . [T]he lawsuit and the causes of action must be based on a commercial transaction. . . . '[T]he gravamen of the lawsuit,' was the

basis on which [the plaintiff] was attempting to recover." 151 Idaho 462, 469, 259 P.3d 608, 615 (2011) (quoting *Great Plains Equip., Inc. v. Northwest Pipeline Corp.,* 136 Idaho 466, 471, 771, 36 P.3d 218, 223, 224 (2001) (*Great Plains Equip. II*)).

The second line of cases clarifies and limits this broad approach. Under this analysis, "[w]hether a party can recover attorney fees under Idaho Code section 12-120(3) depends on whether the gravamen of a *claim* is a commercial transaction." *SilverWing*, 164 Idaho at 799–800, 435 P.3d at 1119–20 (citing *Stevens v. Eyer*, 161 Idaho 407, 410, 387 P.3d 75, 78 (2016) (emphasis added)); *see also Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 272, 483 P.3d 313, 329 (2021). This point was made over twenty years ago in *Great Plains Equip. II*:

> [I]f more than one claim is pled, there can be more than one "gravamen," and attorney fees can still be awarded for a specific claim, if a claim is of the type covered by I.C. § 12–120(3) "even though a claim is covered by other theories that would not have triggered application of the statute."

136 Idaho at 472, 36 P.3d at 224 (quoting *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 79, 910 P.2d 744, 751 (1995)). Thus, the notion of focusing on the gravamen of the *lawsuit* can be confounding. The analysis requires a deeper dive into the gravamen of the claims in the case and the basis for the lawsuit itself. It is not enough that a commercial transaction was tangentially involved in a particular litigation.

There are "two stages of analysis to determine whether a prevailing party could avail itself of I.C. § 12-120(3): (1) there must be a commercial transaction that is integral to the *claim*; and (2) the commercial transaction must be the basis upon which recovery is sought." *Id*. at 471, 36 P.3d at 223 (emphasis added) (internal quotations omitted) (quoting *Brooks*, 128 Idaho at 78, 910 P.2d at 750)). We emphasized this distinction long ago in *Brower v. E.I. DuPont De Nemours & Co.,* 117 Idaho 780, 792 P.2d 345 (1990). The case involved a farmer who made a claim for damages to his land because of his use of an experimental herbicide. *Id.* at 780, 792 P.2d at 345. The complaint sought relief from the manufacturer based on the claim that the manufacturer's representation induced his reliance. *Id.* at 784, 792 P.2d at 349. However, the product was purchased from a local co-op, not from the manufacturer. *Id.* at 780, 792 P.2d at 345. Although there was a commercial transaction involved—the purchase of the manufacturer's product—the commercial transaction was too far removed from the theory of recovery to warrant application of I.C. § 12–120(3).

18

[An] award of attorney's fees is not warranted every time a commercial transaction is remotely connected with the case. Rather, the test is whether the commercial transaction comprises the gravamen of the lawsuit. Attorney's fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the *claim*, and constitutes the basis upon which the party is attempting to recover. To hold otherwise would be to convert the award of attorney's fees from an exceptional remedy justified only by statutory authority to a matter of right in virtually every lawsuit filed.

*Id.* at 784, 792 P.2d at 349 (emphasis added).

Following this authority, analysis of the gravamen of Breckenridge's claims as well as the gravamen of the lawsuit convinces us that attorney fees were improperly awarded here. Breckenridge's complaint against Cornerstone and Wally alleged a violation of Idaho Code section 45-1506, negligence/negligence per se, and estoppel. The claims certainly spun out of a *potential* commercial transaction that Breckenridge hoped to make through a successful bid. Yet its lawsuit was based, not on any transaction, but on independent allegations of equity and tort law.

Count I, alleging a violation of Idaho Code section 45-1506, requested an order from the district court setting aside the sale between Wally and Cornerstone, and requiring Wally and W&R to conduct another sale at which Breckenridge would be permitted to bid. Alternatively, Breckenridge requested an order compelling Wally and W&R to accept its bid, or a judgment against Wally and W&R for damages. Such claims are quintessentially equitable. *See Smutny v. Noble*, 78 Idaho 628, 631, 308 P.2d 591, 592 (1957) (explaining the power to set aside a judgment is equitable relief).

Count II, alleging estoppel, requested W&R and Wally be estopped from restricting the form of payment at a future sale, and requested an order from the district court requiring W&R and Wally to convey title to the property to Breckenridge after it paid for the property. This claim is also an equitable one. *See Boesiger v. Freer*, 85 Idaho 551, 559–61, 381 P.2d 802, 806–07 (1963) (identifying estoppel as an equitable doctrine).

Count III, alleging negligence/negligence per se against Wally and W&R requested an order voiding any instrument conveying title to Cornerstone while granting a judgment against W&R and Wally for damages. Once again, claims in negligence sound in tort, not in contract. Thus, the statutory availability of attorney fees is also unavailable on this claim.

In sum, the gravamen of these claims was not a commercial transaction. And while a commercial relationship existed between Cornerstone and Wally, and between Wally and W&R,

19

Breckenridge had no commercial relationship with either Cornerstone or Wally. Indeed, Breckenridge's efforts to establish a relationship with Wally failed because its bid was rejected. From that limited connection, Wally and Cornerstone cannot prevail under 12-120(3) against Breckenridge for fees.

The district court found that Breckenridge's attempt to set aside a commercial transaction between W&R and Cornerstone made it a party to a commercial transaction:

> [T]he gravamen of Breckenridge's claims attempted to enforce a commercial transaction for the sale of the subject property against W&R by attempting to invalidate the commercial transaction between W&R and Cornerstone. Thus, for purposes of determining attorney fees under I.C. § 12-120(3), the Court finds that a commercial transaction was alleged between Breckenridge and Cornerstone.

We disagree with this analysis. There was never a commercial transaction attempted or intended between Cornerstone and Breckenridge. These two entities were in competition against each other—they were never engaged in a commercial transaction *with* each other. As to Wally, as noted above, Breckenridge's claims were not commercial in nature.

In addition, Breckenridge's complaint did not assert a right to attorney fees under section 12-120(3), nor did it assert any other "commercial transaction" as the basis for its alleged relief. We have held that such allegations can support an award of 12-120(3) fees. *See Garner v. Povey*, 151 Idaho at 469, 259 P.3d at 615 (defendants were entitled to attorney fees because the plaintiff's alleged in their complaint that the parties had engaged in a commercial transaction). Cornerstone asserts that Breckenridge's passing reference in its complaint to being awarded attorney fees under "Idaho Code §§ 12-120 and 12-121 and such other laws as may apply" estops Breckenridge from denying the transaction between them was commercial in nature. There is authority which, at first blush, supports this claim. Building on *Garner*, we have held that a party can be estopped from denying a commercial transaction in a case when the "[a]llegations in the complaint that the parties *entered into a commercial transaction* and that the complaining party is entitled to recover based upon that transaction, are sufficient to trigger the application of I.C. § 12-120(3)." *Carter v. Gateway Parks, LLC*, 168 Idaho 428, 441, 483 P.3d 971, 984 (2020) (emphasis added) (quoting *Garner v. Povey*, 151 Idaho 462, 470, 259 P.3d 608, 616 (2011)). But this is not that case. The complaint here was anything but *clear* about the basis for claimed attorney fees; in fact, subsection three of section 12-120 is not pleaded at all, and we decline to extend this reasoning based on the

20

general language in Breckenridge's complaint. Indeed, in *Garner* we made this point while referencing *Great Plains Equip. II*:

> *Great Plains* thus attempted to clarify that *a mere request for attorney fees pursuant to I.C. § 12–120(3), without more, is not sufficient to trigger the commercial transaction prong of that section.* In other words, neither a claim or request in the prayer of a complaint for fees under I.C. § 12–120(3), nor a request or claim for attorney fees in a memorandum of costs and fees, is sufficient to trigger application of that fee provision. A party seeking fees based on a mere request under I.C. § 12–120(3) must show that a commercial transaction was the gravamen of the action before a court may award fees.

151 Idaho at 470, 259 P.3d at 616 (emphasis added).

We now follow this reasoning precisely. Breckenridge's complaint simply made a passing reference to "12-120," without even mentioning section 12-120(3) specifically. While Cornerstone rightly pointed out that Breckenridge's reference to 12-120, without more, could not have meant anything but 12-120(3), we rely on the distinction made in *Great Plains* that a "mere request for attorney fees pursuant to" section 12-120 is insufficient to estop Breckenridge in this case.

We caution that this result does not mean that commercial claims that are intertwined with non-commercial claims precludes an award of attorney fees. As we explained recently in *Knudsen v. J.R. Simplot Co.*:

> [W]here there are multiple claims in an action, and only some qualify for a fee award under section 12-120(3), attorney's fees are properly denied if those claims are "inseparably intertwined." *See Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 77–79, 910 P.2d 744, 749–51 (1996) (concluding that a district court's denial of attorney's fees under section 12-120(3) was appropriate where the district court determined the fees associated with claims that satisfied section 12-120(3) were "inseparably intertwined" with those that did not). When a party has prevailed on claims for which it is statutorily entitled to an award of attorney's fees and claims upon which it is not, this Court has held "that the prevailing party must apportion the fees between the claim upon which it was entitled to recover ... and the claim upon which it was not." *Advanced Med. Diagnostics, LLC v. Imaging Ctr. of Idaho, LLC*, 154 Idaho 812, 815, 303 P.3d 171, 174 (2013). "Where fees were not apportioned between a claim that qualifies under I.C. § 12-120(3) and one that does not, no fees are to be awarded." *Rockefeller v. Grabow*, 136 Idaho 637, 645, 39 P.3d 577, 585 (2001) (citing *Brooks*, 128 Idaho at 79, 910 P.2d at 752).

168 Idaho 256, 273, 483 P.3d 313, 330 (2021).

Our analysis here clarifies, once again, the potentially disparate reasoning of several cases involving fees awardable under Idaho Code section 12-120(3). Here, there was no commercial transaction ever alleged between Breckenridge and the others. As a result, while the district court

21

recognized the issue as one of discretion, and acted within the outer bounds of its discretion, we conclude the district court acted inconsistent with applicable legal standards and abused its discretion in awarding Cornerstone and Wally fees under Idaho Code section 12-120(3). We reverse the award of attorney fees to Cornerstone and Wally.

**F.      Attorney fees are not awarded on appeal.**

Both respondents request attorney fees under Idaho Code section 12-120(3). Breckenridge likewise requests fees under that statute if this Court "disagrees with Breckenridge's analysis of the [non-]applicability of section 12-120(3). . . ." Breckenridge also relies on I.A.R. 35 and 41. Wally and Cornerstone request fees under Idaho Code section 12-121, and Wally separately requests fees and costs under I.A.R. 35(b)(5), 40, and 41(a) and I.R.C.P. 54(e)(2).

"An award of attorney fees under [Idaho Code section 12-121] will be awarded to the prevailing party on appeal only when this Court is left with the abiding belief that the entire appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Am. Semiconductor., Inc. v. Sage Silicon Sols., LLC*, 162 Idaho 119, 127, 395 P.3d 338, 346 (2017) (citations omitted). An award of fees under Idaho Code section 12-120(3) is mandatory to the prevailing party in civil actions involving commercial transactions. I.C. § 12–120(3).

Since we have reversed the district court's award of attorney fees based on the lack of a commercial transaction, we decline to award fees to any of the parties under Idaho Code section 12-121 or Idaho Appellate Rules 40 and 41 as all parties prevailed in part on appeal. "Where both parties prevail in part on appeal, this Court may deny fees." *Huber v. Lightforce USA, Inc.*, 159 Idaho 833, 855, 367 P.3d 228, 250 (2016) (quoting *Caldwell v. Cometto*, 151 Idaho 34, 41, 253 P.3d 708, 715 (2011)).

## VI. CONCLUSION

For the reasons set forth above, we affirm the district court's decision dismissing Breckenridge's claims against Wally, W&R, and Cornerstone. The district court's judgment awarding attorney fees to Wally and Cornerstone under Idaho Code section 12-120(3) is vacated for the reasons set forth above. No party is entitled to fees or costs on appeal.

Justices BRODY, STEGNER, MOELLER, and ZAHN CONCUR