# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49679

MIDTOWN VENTURES, LLC, an
Idaho limited liability company,

    Plaintiff-Counterdefendant-
    Appellant,

v.

THOMAS P. CAPONE and TERESA
J. CAPONE, as Trustees or their
successors, as to the THOMAS AND
TERESA CAPONE LIVING TRUST,

    Defendants-Counterclaimants-
    Respondents.

_____

THOMAS P. CAPONE and TERESA
J. CAPONE, as Trustees or their
successors, as the THOMAS AND
TERESA CAPONE LIVING TRUST,

    Third-Party Plaintiffs,

v.

CITY OF COEUR D' ALENE, and
COEUR D'ALENE URBAN
RENEWAL AGENCY d/b/a/ IGNITE
CDA,

    Third-Party Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, September 2023 Term

Opinion Filed: 12/8/2023

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Lamont C. Berecz, District Judge.

The district court's decision is affirmed.

John F. Magnuson, Coeur d'Alene, attorney for Appellant Midtown Ventures, LLC. John F. Magnuson argued.

Megan O'Dowd, Coeur d'Alene, attorney for Respondents Thomas and Teresa Capone. Megan O'Dowd argued.

1

_____

BEVAN, Chief Justice.

This appeal concerns the validity of a parking agreement that restaurant owners, Thomas and Teresa Capone ("the Capones"), entered into in 2008 with multiple nonprofit organizations. The Capones and the Idaho Youth Ranch recorded an easement in 1999 ("1999 Easement"), which allowed the Capones' customers to park in the Idaho Youth Ranch's adjoining lot. In 2008, a group of nonprofit organizations was interested in building a workforce housing project on the Idaho Youth Ranch property. The plan contemplated The Housing Company ("THC") purchasing the Idaho Youth Ranch property, and the Urban Renewal Agency of the City of Coeur d'Alene ("LCDC") purchasing four adjacent lots. The Capones' parking area would relocate to one of the four lots. The Capones signed an agreement ("2008 Agreement") memorializing modification of the 1999 Easement to accommodate the new project. Even so, the 2008 Agreement was never finalized, and the workforce housing project was ultimately abandoned.

In 2018, Midtown Ventures, LLC ("Midtown") purchased the Idaho Youth Ranch property from THC. Wanting to enforce the 2008 Agreement to relocate the Capones' 1999 Easement, Midtown attempted to negotiate with both the Capones and the City of Coeur d'Alene ("City") but was unsuccessful in achieving an acceptable resolution. Midtown then filed a complaint against the Capones, alleging breach of contract and seeking specific performance. After cross-motions for summary judgment were filed, the district court granted summary judgment to the Capones, concluding Midtown lacked standing to challenge the 2008 Agreement, but that even if properly challenged, the 2008 Agreement was unenforceable. Midtown moved for reconsideration, which the district court denied. Midtown timely appeals. For the reasons below, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 1999, the Capones purchased property at 751 N. 4th Street in Coeur d'Alene, Idaho, to open a restaurant called "Capone's Pub & Grill." Shortly after buying the property, the Capones wanted to expand their restaurant, but the City required more parking before it would approve the expansion. The Idaho Youth Ranch, a nonprofit corporation, owned the property directly north of the Capones' restaurant. The Capones worked with the Idaho Youth Ranch to negotiate an easement by which the Capones' customers could access evening parking on the Idaho Youth Ranch's property. In March 1999, the parties reached an agreement and recorded the Common

2

Access Easement and Mutual Parking Agreement—the 1999 Easement—which allowed the Capones' customers to park on the Youth Ranch property in the evenings. The City was named as a third-party beneficiary to the 1999 Easement, stipulating that the easement could not be terminated without the City's written consent. In 2008, several nonprofits, including the Idaho Youth Ranch, THC, LCDC, and the City, approached the Capones with a plan to redevelop the land next to Capones' Pub & Grill to create affordable housing. These nonprofits asked the Capones to sign an agreement reflecting the plan—the 2008 Agreement.

Generally, the 2008 Agreement contemplated that THC would buy the Idaho Youth Ranch property. LCDC would also buy four adjoining lots, which were

> expected to be Lots 5, 6, 20, and 21 Block 6 Addition to the City of Coeur d'Alene, Idaho [describe further] ('the New Parking Location').

(Bracketed statements original).

The Agreement also indicated that the Capones' 1999 Easement would move to one of the lots LCDC purchased. The 2008 Agreement contained several blank spaces for the parties to fill in and add several conditions as noted in brackets, including the purchased properties

> being no further than 400 yards [feet], [describe further], [describe lots], [??], and [THC?].

(Bracketed statements original).

All parties except the City signed the 2008 Agreement. In the summer of 2008, the Idaho Youth Ranch conveyed the property to THC. LCDC later bought the lots, described as: "Lots 5, 6, 21, and 22, Block 6, Russell's Addition to the City of Coeur d'Alene according to the Plat recorded in Book K of Plats, Page 127, records of Kootenai County."

Ultimately, the workforce housing project faced opposition in the community and was abandoned. In the years after the 2008 Agreement, the Capones continued using the Idaho Youth Ranch's former parking lot based on the 1999 Easement. Then, in 2018, THC deeded the lot to Midtown, a for-profit development company, via a warranty deed. The warranty deed conveyed the lot to Midtown "free from all encumbrances EXCEPT…rights of way of view and covenants, conditions, restrictions, *easements*[.]" (Capitalization in original; emphasis added). The next year, Midtown tried to convince the Capones and the City to terminate the 1999 Easement and move the restaurant parking elsewhere. Neither the Capones nor the City agreed to do so.

On March 19, 2021, Midtown filed a complaint against the Capones. The complaint asserted claims involving: (1) breach of contract regarding the 2008 Agreement, (2) specific

3

performance, and (3) declaratory relief. Midtown also requested attorney fees under Idaho Code section 12-120(3). The Capones filed an answer responding to Midtown's complaint.[1] The parties cross-moved for summary judgment. After hearing, the district court denied Midtown's motion and granted the Capones', concluding, among other findings, that Midtown lacked standing to challenge or enforce the 2008 Agreement, the 2008 Agreement was not a valid contract, promissory estoppel was inapplicable, and the 1999 Easement remains in effect. Midtown moved for reconsideration, urging for the first time that the district court consider the 2008 Agreement as an equitable servitude. Midtown also presented an assignment of rights from THC to Midtown, which it obtained after the district court's initial ruling, to show privity of contract with the 2008 Agreement. The district court declined to consider Midtown's new evidence and denied the motion for reconsideration. Midtown timely appealed.

## II. ISSUES ON APPEAL

1. Whether Midtown has standing to bring its causes of action.

2. Whether the district court abused its discretion in overruling Midtown's evidentiary objections.

3. Whether the district court abused its discretion in denying Midtown's motion for reconsideration.

4. Whether the district court erred in determining that the 2008 Agreement was not a valid or enforceable contract.

5. Whether the district court abused its discretion in denying Midtown the equitable remedy of promissory estoppel.

6. Whether the district court abused its discretion in awarding attorney fees to the Capones under Idaho Code section 12-120(3).

7. Whether either party is entitled to attorney fees on appeal.

## III. STANDARDS OF REVIEW

"This Court employs the same standard as the district court when reviewing rulings on summary judgment motions." *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140, 456 P.3d 201, 209 (2019)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. (quoting I.R.C.P. 56(a)). "A moving party must support its assertion by citing particular materials in the record or

---

[1] The Capones also filed a third-party complaint against LCDC, but LCDC was later dismissed.

4

by showing the 'materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s].'" *Id*. (quoting I.R.C.P. 56(c)(1)(B)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Id*. at 641, 485 P.3d at 137 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). A "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id*.

When reviewing the grant or denial of a motion for reconsideration, the district court, as well as this Court, "must apply the same standard of review that the court applied when deciding the original order that is being reconsidered." *Drakos v. Sandow*, 167 Idaho 159, 162–63, 468 P.3d 289, 292–93 (2020) (quoting *Alsco, Inc. v. Fatty's Bar, LLC*, 166 Idaho 516, 524, 461 P.3d 798, 806 (2020)). Thus, "when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id*. (citing *Ciccarello v. Davies*, 166 Idaho 153, 159, 456 P.3d 519, 525 (2019)).

Additionally, this Court reviews a challenge to the district court's evidentiary rulings and the decision to award attorney fees and costs under an abuse of discretion standard. Because the "imposition of an equitable remedy requires a balancing of the equities, which is inherently a factual determination" a district court's findings on equitable claims are also reviewed under an abuse of discretion standard. *West Wood Invs. v. Acord*, 141 Idaho 75, 82, 106 P.3d 401, 408 (2005). When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## IV. ANALYSIS

Neither party disputes that the 1999 Easement created a valid easement encumbering Midtown's property to the benefit of the Capones. Rather, the overarching question on appeal is whether the 2008 Agreement was a contract to relocate the 1999 Easement, as Midtown proposes, or an indefinite "agreement to agree," as the Capones claim. With that framework in mind, we

must first determine Midtown's standing to bring this case before we can consider the merits of Midtown's arguments on appeal.

### A. Midtown has standing to bring its causes of action.

The foundation from which Midtown alleges it has standing comes from THC's assignment of rights, signed after the first hearing on the summary judgment motions, on December 21, 2021. The district court declined to consider the assignment as untimely and not touching on the correctness of its decision. Because "standing is jurisdictional[,] [it] may be raised at any time." *Med. Recovery Services, LLC v. Eddins*, 169 Idaho 236, 243, 494 P.3d 784, 791 (2021) (quoting *Koch v. Canyon Cnty.*, 145 Idaho 158, 162, 177 P.3d 372, 376 (2008)). By virtue of Midtown's property interest in land encumbered by the Capones' easement, we conclude Midtown has standing to pursue its claims.

"[J]usticiability doctrines implicate jurisdiction." *Groveland Water & Sewer, Dist. v. City of Blackfoot*, 169 Idaho 936, 940, 505 P.3d 722, 726 (2022) (quoting *Tucker v. State*, 162 Idaho 11, 18, 394 P.3d 54, 61 (2017)). "Jurisdictional issues, like standing, are questions of law, over which this Court exercises free review." *Id.* (quoting *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012)). "Concepts of justiciability, including standing, identify appropriate or suitable cases for adjudication by a court." *Id.* at 942, 505 P.3d at 728 (quoting *Miles v. Idaho Power Co.*, 116 Idaho 635, 639, 778 P.2d 757, 761 (1989)). "The doctrine of standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Id*. (quoting *Miles*, 116 Idaho at 641, 778 P.2d at 763). "To satisfy the requirement of standing litigants must allege an injury in fact, a fairly traceable causal connection between the claimed injury and the challenged conduct, and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.* (quoting *Knox v. State ex rel. Otter*, 148 Idaho 324, 336, 223 P.3d 266, 278 (2009)). "An injury sufficient to satisfy the requirement of an injury in fact "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Knox*, 148 Idaho at 336, 223 P.3d at 278).

The Capones argue that Midtown lacks standing to bring this action because it lacked contractual privity with them under the 2008 Agreement. Although a party needs to show privity to have standing to sue on a breach of contract claim, privity is not required to establish standing here since Midtown now owns the servient estate at issue and asserts claims other than breach of contract. "'Privity' is '[t]he connection or relationship between two parties, each having a legally

6

recognized interest in the same subject[.]'" *DAFCO LLC v. Stewart Title Guar. Co.*, 156 Idaho 749, 754, 331 P.3d 491, 496 (2014) (quoting *Privity*, BLACK'S LAW DICTIONARY (9th ed. 2009)). Standing, on the other hand, "focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Miles*, 116 Idaho at 641, 778 P.2d at 763 (quoting *Valley Forge College v. Americans United*, 454 U.S. 464 (1982).

"When an issue of standing is raised, the focus is not on the merits of the issues raised, but upon the party who is seeking the relief." *Bagley v. Thomason*, 149 Idaho 806, 808, 241 P.3d 979, 981 (2010) (quoting *Scona, Inc. v. Green Willow Tr.*, 133 Idaho 283, 288, 985 P.2d 1145, 1150 (1999)). "Indeed, a party can have standing to bring an action, but then lose on the merits." *Id.* (quoting *Miles v. Idaho Power Co.*, 116 Idaho 635, 778 P.2d 757 (1989)). Midtown has standing to bring this action. This does not imply, however, that Midtown should prevail on the merits, as we detail below.

**B.**     **Midtown waived its argument challenging the district court's evidentiary rulings.**

Midtown next challenges the district court's decision on Midtown's evidentiary objections, arguing that the district court erred in overruling a series of objections that Midtown raised to two declarations the Capones submitted. The Capones point out that Midtown failed to support this position with citation to authority and identified no substantial rights affected by the district court's decision. We agree. Midtown has waived its challenge to the district court's evidentiary rulings.

"[W]hen appealing from an evidentiary ruling reviewed for [an] abuse of discretion, the appellant must demonstrate both the trial court's abuse of discretion and that the error affected a substantial right." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012). "If the appellant does not present argument that the court's error affected a substantial right, the issue is waived." *AED, Inc. v. KCD Invs., LLC*, 155 Idaho 159, 164 (2013). "The party asserting the abuse of discretion carries the burden of demonstrating that an abuse of discretion occurred, and a failure to do so is fatal to its argument." *Nielson v. Talbot*, 163 Idaho 480, 489, 415 P.3d 348, 357 (2018) (citing *Green River Ranches, LLC v. Silva Land Co., LLC*, 162 Idaho 385, 397 P.3d 1144, 1151 (2017)).

Midtown's brief is devoid of reference to any prong under the abuse of discretion standard that the district court ostensibly violated. *See Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). Indeed, other than a few conclusory assertions that the district court abused its discretion, Midtown largely fails to explain how the district court abused its discretion. This

Court has repeatedly explained that "[f]ailing to demonstrate that an abuse of discretion occurred under any part of the test applied by this Court . . . is fatal to [an] argument that the court abused its discretion." *Valiant Idaho, LLC v. VP Inc.*, 164 Idaho 314, 332, 429 P.3d 855, 873 (2018) (internal quotation and citation omitted). And though this Court does not impose a "formalistic requirement that the standard of review be recited and the party claiming error attack a particular prong of that standard of review," the failure to articulate the abuse of discretion prong challenged and put forth an argument under that prong is fatal. *State v. Diaz*, 170 Idaho 79, 92, 507 P.3d 1109, 1122 (2022). It was Midtown's burden to establish an abuse of discretion, and its failure to pinpoint how the district court did so is fatal to its argument.

Midtown has also failed to identify any prejudice to a substantial right it may have suffered from the evidentiary rulings it contests in its opening brief. Instead, for the first time in its reply brief, Midtown advanced an argument that the district court prejudiced a substantial right by relying on inadmissible testimony at summary judgment. But "'this Court will not consider arguments raised for the first time in the appellant's reply brief.'" *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) (quoting *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004)). "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Id.* Based on Midtown's failure to articulate the abuse of discretion prong it is challenging, analyze the district court's decision under that standard, and reference any substantial rights that were violated in its opening brief, we conclude that the issue is waived on appeal.

**C.    The district court did not abuse its discretion in declining to admit new evidence with Midtown's motion for reconsideration**.

The district court's summary judgment decision in favor of the Capones presumed that Midtown lacked standing, but that even if it had standing, the 2008 Agreement was not an enforceable contract. Midtown argues that the district court "abused its discretion and erred" by declining to consider the assignment of rights submitted with Midtown's motion for reconsideration. This is true, Midtown argues, because the Capones did not object to the district court's consideration of the assignment. As we have already discussed, Midtown has standing to pursue this case, but the admission of new evidence is a distinct legal issue that we analyze independently from whether the district court was required to consider Midtown's new evidence

8

or whether Midtown could raise the prospect of an equitable servitude for the first time in its motion to reconsider. For the reasons below, we affirm the district court's decision.

The district court has "the discretion to determine whether it will consider additional evidence in support of a motion for reconsideration, if it is submitted late." *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 234, 494 P.3d 769, 782 (2021). While a district court should consider new facts that bear on the correctness of an order when a party submits a motion to reconsider, "this rule was not designed to allow parties to bypass timing rules or fail to conduct due diligence prior to a court's ruling." *Ciccarello v. Davies*, 166 Idaho 153, 162, 456 P.3d 519, 528 (2019) (internal marks and citations omitted). *See* I.R.C.P. 56(b)(2) ("any opposing documents must be served at least 14 days before the date of the hearing").

Below, the parties filed cross-motions for summary judgment, with Midtown maintaining that the 2008 Agreement was an enforceable contract, even though it was not a party to the contract. The district court heard oral argument on the motions on December 15, 2021, and issued its memorandum decision on January 26, 2022. Following that decision, Midtown moved for reconsideration, and for the first time, argued the 2008 Agreement was "an equitable servitude for the benefit of the subject property that ran with the same for the benefit of Midtown." Midtown's argument was based on a declaration from John Beutler, a member of Midtown LLC. Attached to that declaration was an assignment of rights, in which THC assigned its rights in the 2008 Agreement to Midtown. The assignment is dated December 28, 2021—nearly two weeks after the district court heard the parties' oral arguments on summary judgment. In its order denying Midtown's motion to reconsider, the district court focused on the timing of the new evidence, and explained:

> Midtown's other argument on standing is based on evidence that following argument on the summary judgment motion, Midtown went to THC and bought an assignment of rights to the parking agreement. Summary judgment was argued on December 15, 2021. Midtown obtained the assignment on December 28, 2021 and this [c]ourt's order granting summary judgment was entered on January 26, 2022. Against this backdrop, the [c]ourt will not consider Midtown's new evidence, the Declaration of John A. Beutler, regarding Midtown's recent purchase of an assignment from THC.
>
> . . .
>
> The Beutler declaration is not evidence touching on the correctness of the original order. Rather, it is an attempt to rectify an identified shortcoming in Midtown's case. This declaration was not material evidence in the record that was simply not

9

originally provided to the [c]ourt. . . . Thus, this [c]ourt considers Beutler's declaration the type of evidence that should have been procured long before the summary judgment hearing and declines to now consider it. Without consideration of this new evidence, Midtown remains without standing to enforce any agreement or contract claims against the Capones.

While the district court's reasoning led it to incorrectly conclude Midtown did not have standing, its analysis is still applicable to its rationale for declining to admit evidence under the motion to reconsider. Midtown does not address the district court's rationale on appeal, nor does it challenge the conclusion that the Beutler declaration was not evidence touching on the correctness of the court's original order. Instead, Midtown merely reiterates its complaint that the district court's refusal to consider the assignment was an abuse of discretion "[u]nder the facts and circumstances at bar." Because the assignment of rights was untimely submitted under Idaho Rule Civil Procedure 56(b)(2), and Midtown's supporting declaration from Beutler did not address the correctness of the court's original decision, the district court acted within its discretion in declining to consider the assignment. As a result, we conclude that the district court did not abuse its discretion in declining Midtown's untimely evidence.

We turn briefly to Midtown's equitable servitude argument, which was raised for the first time in its motion for reconsideration. "A motion to reconsider allows the trial court to do just that: reconsider its prior ruling in the light of new evidence or additional authority." *BrunoBuilt, Inc. v. Erstad Architects, PA*, 171 Idaho 928, 528 P.3d 531, 542 (2023). "It is not a vehicle to undermine the trial court's decision on appeal by allowing newly asserted arguments and evidence—placed into the record at the eleventh hour—to provide a basis for an appellate court to second guess the trial court's initial decision." *Id.* Midtown waited to assert its equitable servitude theory until *after* the district court granted summary judgment in favor of the Capones. Consistent with the very nature of the motion, a district court cannot "reconsider" an argument never presented to it in a timely way. A motion for reconsideration is intended to protect parties against the court's errors, but "it is not intended to be a mechanism that encourages tactical brinkmanship or a lack of diligence." *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 234, 494 P.3d 769, 782 (2021). As a result, we will not independently consider Midtown's new arguments now. Accordingly, the district court's decision to reject Midtown's new evidence is affirmed.

**D.    The 2008 Agreement was not a contract.**

The parties do not dispute that the Capones and the nonprofits agreed in principle to relocate the Capones' easement; each of them (except the City of Coeur d'Alene) signed the 2008 Agreement. But the Agreement itself conveys that the parties were memorializing a mere "wish": "the parties wish to take certain actions to provide parking . . . in the Mid-Town [sic] area of the City. . . ." However, the parties dispute whether that 2008 Agreement was a complete and final contract or just an agreement to agree. From Midtown's perspective, the 2008 Agreement contained all the essential terms necessary to constitute a contract. We disagree. For the reasons below, we conclude that, at most, the 2008 Agreement was merely an "agreement to agree," not an enforceable contract.

"[F]or a contract to be formed[,] there must be a meeting of the minds. A meeting of the minds is evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance." *Tricore Investments, LLC v. Estate of Warren through Warren*, 168 Idaho 596, 615, 485 P.3d 92, 111 (2021) (quoting *Unifund CCR, LLC v. Lowe*, 159 Idaho 750, 754, 367 P.3d 145, 149 (2016)). "The meeting of the minds must occur on all material terms to the contract." *Id.* (quoting *Barry v. Pacific West Const., Inc.*, 140 Idaho 827, 831, 103 P.3d 440, 444 (2004)). "The material terms which must be identified in a contract to convey land include the parties to the contract, the subject matter of the contract, the price or consideration, and a description of the property." *Id.* (quoting *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 722, 874 P.2d 528, 533 (1994)). "Whether there was a meeting of the minds is an objective inquiry that does not focus on the subjective beliefs or intentions of [the parties]." *Id.* (alterations original) (quoting *BrunoBuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 217, 457 P.3d 860, 869 (2020)).

The district court found that the 2008 Agreement

> is neither valid nor enforceable. The 2008 agreement is clearly an agreement to agree in the future. . . . The 2008 agreement itself recognized that it was far from complete. . . . Reading the agreement it becomes clear that it is merely a document evidencing a hopeful intent to finalize an agreement in the future.

The district court's decision then articulated *why* each provision in the 2008 Agreement was incomplete and *why* those provisions amounted to a future intent to agree but could not form a contract. As the district court recognized, the following terms in the 2008 Agreement were incomplete:

11

- "…the parties wish to take certain actions to provide parking at or near the intersection (the "Intersection") of 4th Street and Roosevelt Avenue **[??]** in the Mid-Town area of the City…"

- "…the Youth Ranch has requested Capone's [sic] to agree to the relocation of the Parking Provision to another area within the Development but no further than **[handwritten 400]** yards **[feet]** from Capone's [sic] property…"

- "...Capone's [sic] has agreed to such relocation, expected to be to Lots **[handwritten 5, 6, 20, 21]** Block **[handwritten 6]** Addition to the City of Coeur d'Alene, Idaho **[describe further]** (the "New Parking Location");"

- "...LCDC has committed to purchase property **[describe lots]** (the "LCDC" Property) within **[handwritten 400]** yards **[feet]** of the Capone's [sic] property…"

- "…the City, LCDC are also working on providing additional angled parking on Roosevelt Avenue **[??]** which would assist Capone's [sic];"

- "It is agreed that the Parking Provision will be relocated to property within **[handwritten 400]** yards **[feet]** of Capone's [sic] property on the LCDC property and that the Parties will work toward execution of more complete documents evidencing the relocation as soon as possible once the New Parking Location is ready for parking in accordance with the requirements of the City. LCDC intends to acquire the property for the New Parking Location."

- "THC intends to create the Development and the Youth Ranch intends to move to new property within the Development area."

- "It is agreed that **[THC?]** shall cover the costs…"

(Bracketed statements in original; emphasis added).

Midtown argues that the 2008 Agreement "simply and unambiguously provides that the parties *will execute* a recordable instrument to relocate an easement that benefits the Capone property once the parties have fully performed their obligations to provide a 'New Parking Location.'" (Emphasis added). This language, Midtown reasons, is no different from parties who enter a standard real estate purchase agreement that sets forth conditions to be completed at closing. Even so, Midtown's own argument acknowledges that the 2008 Agreement was not complete until other conditions were satisfied, i.e., a new parking location was built. That condition was never satisfied. While LCDC purchased three of the lots in the agreement, and the fourth it purchased

12

(number 22) was not identified in the agreement, and nothing in the record suggests those lots were converted to parking.

Regardless of whether the 2008 Agreement was intended to be complete, it is missing material terms and signatures. Specifically, the terms in the 2008 Agreement do not provide where the parking easement would be relocated. Instead, the agreement merely anticipated that the proposed "New Parking Location" would consist of four possible lots ("5, 6, and 20, 21"), which LCDC hoped to purchase. Midtown never purchased lot 20. Even so, Midtown counters that the Agreement stipulates that the "New Parking Location" must be "within 400 yards [feet] of the Capones' property. . . ." Two of the four lots are within 329 feet, while the other two lots are within 409 feet. Midtown maintains that this alleged infirmity does not render the 2008 Agreement unenforceable. But the parking lot's precise location is a material term in any contract that is designed to create a parking easement. The lack of specificity about that material term is fatal. "No enforceable contract comes into being when parties leave a material term for future negotiations, creating a mere agreement to agree." *BrunoBuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 217, 457 P.3d 860, 869 (2020) (quoting *Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 621, 226 P.3d 1263, 1268 (2010)). And "both parties to a bilateral contract [must] sign the memorandum." *Hoffman v. S V Co., Inc.*, 102 Idaho 187, 190, 628 P.2d 218, 221 (1981) (citing *Houser v. Hobart*, 22 Idaho 735, 127 P. 997 (1912)). Contrary to Midtown's argument, the language in the 2008 Agreement unambiguously set forth actions the parties *intended* to take; it is not a complete agreement and is missing material terms.

Separately, the 2008 Agreement remains unsigned by the City, a third-party beneficiary to the 1999 Easement. The 1999 Parking Agreement and Easement requires that it "not be terminated without approval of the parties . . . *and the City of Coeur d'Alene*." (Emphasis added). The 2008 Agreement, if completed, would have represented a material change in position relative to the City's oversight of and interest in parking within the City of Coeur d'Alene. *See* REST. (SECOND) OF CONTRACTS § 311, cmt g ("If there is a material change of position in justifiable reliance on the promise, the change of position precludes discharge or modification of the contract without the beneficiary's consent."). Moving the parking location without the signature of the third-party beneficiary—the City—is likewise fatal to Midtown's position.

The district court separately concluded that abandoning the workforce housing project meant the 2008 Agreement no longer applied. The district court noted that it was the particular

13

*purpose* of the development (workforce housing) that made the 2008 Agreement unique to the nonprofits. Midtown challenges this finding, arguing that if it used the property in a way that differed from the 2008 Agreement, the Capones have remedies available to them *after* Midtown puts forth a development proposal.

Where the contract describes a specific project, expanding the scope to other uses is outside the terms of the contract. *See, e.g.*, *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006) (citing *Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003)) ("An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner."). The 2008 Agreement here described specific projects, not specific uses: "the Youth Ranch, the LCDC, and THC are assembling property and preparing for development (the "Development") of property . . . for workforce housing and retail development, which will benefit all of the Parties[.]" Midtown has never asserted it intends to pursue a workforce housing and retail development, which the 2008 Agreement explicitly contemplates. As a result, this argument from Midtown is equally unavailing. Ultimately, we conclude that the district court properly found that the 2008 Agreement was an incomplete agreement to agree on a specific project between nonprofits to construct workforce housing, and we affirm.

E. **Midtown waived whether the district court erred in denying the equitable remedy of promissory estoppel.**

As an alternative to both Midtown's arguments that the 2008 Agreement was an enforceable contract or an equitable servitude, Midtown proposes a third option: the 2008 Agreement should have been enforced under a promissory estoppel theory. Midtown argues that because it is (as of December 21, 2021) a successor-in-interest to THC, it stands in THC's shoes and can enforce the Capones' promise. We hold that Midtown has failed to establish any basis to assert promissory estoppel as a defense.

In Idaho, "[a] cause of action for promissory estoppel requires a plaintiff to prove: '(1) reliance upon a specific promise; (2) substantial economic loss to the promisee as a result of such reliance; (3) the loss to the promisee was or should have been foreseeable by the promisor; and (4) the promisee's reliance on the promise must have been reasonable.'" *SilverWing at Sandpoint, LLC v. Bonner County*, 164 Idaho 786, 795, 435 P.3d 1106, 1115 (2018) (quoting *Zollinger v. Carrol*, 137 Idaho 397, 399, 49 P.3d 402, 404 (2002)). Additionally, "the doctrine of promissory estoppel is intended as a substitute for consideration, and *not as a substitute for an agreement*

14

*between the parties.*" *Zollinger*, 137 Idaho at 400, 49 P.3d at 405 (citing *Smith v. Kenworth Sales, Inc.*, 102 Idaho 63, 68, 625 P.2d 417, 422 (1981) (emphasis added)).

Below, the district court concluded that promissory estoppel was inapplicable:

> In this case, the doctrine of promissory estoppel is not applicable. Midtown fails to provide what promise or agreement the Capones made to it, which it now seeks to enforce. As stated above, Midtown does not have standing to challenge or enforce the 2008 agreement because it was not in privity to that agreement nor is it the successor in interest to [THC's] organization. As a result, the 2008 agreement cannot be the alleged promise the Capones made. Similarly, Midtown failed to demonstrate any of the other three factors (substantial economic loss, the loss being foreseeable by the promisor, and the promisse's [sic] reasonable reliance) necessary for application of promissory estoppel.

Midtown's focus on appeal is on the first two elements of promissory estoppel: reliance and economic loss. As for reliance, Midtown alleges that "[THC] (and Midtown by its succession) own a parcel of property acquired for development for workforce housing and retail but which remains undevelopable because of the Capones' intransigence." But there was no "intransigence" between the Capones and Midtown. As the district court pointed out, there was no promise between Midtown and the Capones, and the promise between the Capones and THC never materialized. As to "substantial economic loss," the only argument Midtown makes on appeal to support this claim is a conclusory assertion that it suffered "a loss that was foreseeable to the Capones, and result[ed] in substantial economic loss." The facts here do not support this claim.

Midtown must either show there was a contractual relationship with the Capones or that Midtown's intent to build on the land was foreseeable to the Capones. Midtown makes no argument that there was a direct contractual relationship between it and the Capones, only that it stands in THC's shoes to *THC's* agreement with the Capones. Indeed, Midtown conceded below that "[t]he promise was made by the Capones to [THC] . . . [and] the parties who owned those properties . . . have knowledge of it is in [sic] agreement that affects rights in the property regardless of its lack of recordation[.]" As the district court properly acknowledged, there was no specific promise or agreement between the Capones and Midtown.

This Court has considered whether a claim for promissory estoppel can survive the conclusion that there was no contractual relationship between the parties. *See Zollinger*, 137 Idaho at 398, 49 P.3d at 403. *Zollinger* involved a claim for promissory estoppel on an otherwise illegal agreement between two shareholders and a corporation. We analyzed the reliance and reasonableness prongs of the promissory estoppel test. *Id*. The plaintiff personally guaranteed a

15

line of credit and surety for a bond so the corporation could compete for bids on a construction project. *Id*. The respondents agreed to transfer their personal stock portfolios to the corporation "solely and exclusively for the purpose of qualifying for a performance bond." *Id*. In return, the respondents could buy shares in the corporation. *Id*. When the corporation could not satisfy its liabilities, the plaintiff made personal payments, then sued the respondents to recover sums he paid on behalf of the corporation. *Id*. The trial court rejected the plaintiff's argument that it had relied on the shareholder agreement because neither of the respondents made a promise to the plaintiff, "either as a promisee or as a third-party beneficiary." *Id*. We clarified that the plaintiff's promissory estoppel claim could be established "only if [the plaintiff] can show that a contractual relationship existed between [the respondents] and [the corporation], for his benefit, and that it was foreseeable that he would rely on that agreement[.]" *Id*. at 400, 49 P.3d at 405.

Without establishing reliance on a promise between the Capones and Midtown, Midtown's promissory estoppel claim fails. Absent an express agreement, Midtown may not rely on a 2008 agreement between THC and the Capones which never materialized to form the basis of promissory estoppel some ten years later. Accordingly, we hold that the district court properly concluded promissory estoppel was inapplicable.

F.    **Midtown is estopped from challenging the district court award of attorney fees to the Capones under Idaho Code section 12-120(3).**

Midtown appeals the district court's decision to award attorney fees to the Capones under Idaho Code section 12-120(3). Midtown requested attorney fees in its complaint under section 12-120(3), though it cited the statute without argument. The Capones did not request fees under that section when they filed their answer and counterclaim, but the Capones sought fees under 12-120(3) after prevailing below. Midtown objected to that request, arguing that the Capones' claim was based on Midtown's complaint without further discussion on whether there was a commercial transaction. On appeal, Midtown maintains that the district court abused its discretion in awarding fees under 12-120(3).

This Court has recently attempted to clarify the requirements for attorney fees under section 12-120(3). *See Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc*. 170 Idaho 649, 516 P.3d 73 (2022). We have also clarified that "a party can be estopped from denying a commercial transaction in a case when the '[a]llegations in the complaint that the parties entered into a commercial transaction and that the complaining party is entitled to recover based upon that

16

transaction, are sufficient to trigger the application of [section] 12-120(3).'" *Breckenridge*, 170 Idaho at 665, 516 P.3d at 89 (quoting *Carter v. Gateway Parks, LLC*, 168 Idaho 428, 441, 483 P.3d 971, 984 (2020)).

Midtown specifically alleged Idaho Code section 12-120(3) as the statutory basis for fees in its complaint. Midtown also argued it was in privity to the 2008 Agreement with the Capones both below and on appeal. "Where a party alleges the existence of a contractual relationship of a type embraced by section 12–120(3) . . . that claim triggers the application of [I.C. section 12–120(3)] and a prevailing party may recover fees even though no liability under a contract was established." *Am. W. Enterprises, Inc. v. CNH, LLC*, 155 Idaho 746, 755, 316 P.3d 662, 671 (2013) (quoting *Farmers Nat. Bank v. Shirey*, 126 Idaho 63, 73, 878 P.2d 762, 772 (1994)). "This same principle applies where the action is one to recover in a commercial transaction, regardless of the proof that the commercial transaction alleged did, in fact, occur." *Id.* (quoting *Magic Lantern Prod. v. Dolsot*, 126 Idaho 805, 808, 892 P.2d 480, 483 (1995)). As a result, Midtown is estopped on appeal from arguing that section 12-120(3) does not apply. Accordingly, the district court's decision is affirmed.

## G. The Capones are entitled to attorney fees on appeal.

Both parties request attorney fees and costs on appeal. The Capones request attorney fees and costs under Idaho Appellate Rule 35(b)(5) and Idaho Code sections 12-120(3) and 12-121. An award of fees under Idaho Code section 12-120(3) is mandatory to the prevailing party in civil actions involving commercial transactions. I.C. § 12–120(3). The Capones are entitled to attorney fees as the prevailing party on appeal under Idaho Code section 12-120(3). "When a party prevails at both trial and on appeal, and that party received an award of attorney fees under Idaho Code section 12- 120(3) at the trial level and the award is affirmed on appeal, that party is also entitled to an award of attorney fees for the appeal pursuant to Idaho Code section 12-120(3)." *Idaho Transp. Dep't v. Ascorp, Inc.,* 159 Idaho 138, 142, 357 P.3d 863, 867 (2015). As we have addressed above, Midtown raised section 12-120(3) in its complaint and is estopped from challenging an award of fees on that ground now. Because we affirm the district court's judgment, including its award of attorney fees to the Capones under section 12-120(3), we likewise conclude that the Capones are entitled to attorney fees on appeal under Idaho Code section 12-120(3).

## V. CONCLUSION

The district court's judgment is affirmed. As the prevailing parties, the Capones are entitled to attorney fees on appeal under Idaho Code section 12-120(3) and costs as a matter of right under Idaho Appellate Rule 40(a).

JUSTICES BRODY, STEGNER, MOELLER and ZAHN CONCUR.